## John M. Harris v. The State.

### No. 4385. Decided March 10, 1909.

**1.—Robbery—Indictment—Separate Offenses—Election by State.**

Where the indictment on its face showed the transaction of a robbery not to be severable and distinct, but the State's testimony disclosed the fact of two severable and distinct robberies, the indictment was not thereby necessarily defeated, but the court should have required an election by the State, which demand was made at the proper time and overruled, which was reversible error; and this although defendant received the lowest punishment.

**2.—Same—Charge of Court—Contemporaneous Offenses—Limiting Testimony.**

Where upon trial for robbery the indictment charged one transaction, but the proof disclosed two severable and distinct robberies, the State should have been required to elect and the testimony concerning the robbery for which defendant was not on trial, if admissible, should have been properly limited.

**3.—Same—Other Offenses—Evidence.**

Where upon trial for robbery, the indictment charged upon its face one transaction, but the proof developed two separate and distinct robberies, it was reversible error to refuse to require the State to elect and permit it to introduce testimony with reference to both robberies.

**4.—Same—Election by State—Charge of Court—Severable Offenses.**

See opinion for a state of facts which shows severable offenses and not one continuous offense; and also with reference to the question of election by the State and what testimony would be admissible in the event of such an election, and how such testimony should be limited in the court's charge.

**5.—Same—Charge of Court—Grouping Facts—Burden of Proof.**

Where upon trial for robbery the court in his charge grouped the different exculpatory facts and required that before the jury could acquit defendant they must affirmatively believe that all these facts were true, the same shifted the burden of proof, and was reversible error; and this although the court properly charged the presumption of innocence. Following Johnson v. State, 29 Texas Crim. App., 150; 15 S. W. Rep., 647.

Appeal from the District Court of Howard. Tried below before the Hon. Jas. L. Shepherd.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Goodson & Goodson,* for appellant.—On question of State's election: Hill v. State, 44 Texas Crim. Rep., 603, 73 S. W. Rep., 9; Barnett v. State, 50 Texas Crim. Rep., 538, 99 S. W. Rep., 556; Herndon v. State, 50 Texas Crim. Rep., 552, 99 S. W. Rep., 558; Lightfoot v. State, 106 S. W. Rep., 345. On question of court's charge: Taylor v. State, 4 Texas Crim. App., 29; Alexander v. State, 53 Texas Crim. Rep., 553, 110 S. W. Rep., 918; Murdock v. State, 52 Texas Crim. Rep., 262, 106 S. W. Rep., 374; Hineman v. State, 2 S. W. Rep., 619; Corneilus v. State, 112 S. W. Rep., 1050.

*F. J. McCord,* Assistant Attorney-General, for the State.—On the question of continuous offense: Moore v. State, 33 Texas Crim. Rep.,

166; Wilsox v. State, 6 Lea. Rep., 571; Skipworth v. State, 8 Texas
Crim. App., 135; Hickey v. State, 23 Ind., 21; People v. McGowan,
17 Wend., 386; Haskins v. People, 16 N. Y., 344; Carroll v. State,
42 Texas Crim. Rep., 30.

RAMSEY, Judge.—Appellant was indicted in the District Court
of Howard County upon a charge of robbery. There were two
counts in the indictment. The first only was submitted to the jury.
This count omitting the formal parts thereof, was as follows: That
John Harris on or about the 4th day of February, 1907, and
anterior to the presentment of this indictment, in the county of
Howard and State of Texas, did then and there unlawfully and
wilfully make an assault upon the person of J. J. Burleson and
then and there by said assault and by violence to the said J. J.
Burleson and by putting the said J. J. Burleson in fear of life
and bodily injury, did then and there fraudulently take from the
person and possession and without the consent and against the will
of the said J. J. Burleson twelve dollars in money of the value of
twelve dollars; and one hundred dollars in money of the value of
one hundred dollars, the said property then and there being the
corporeal personal property of the said J. J. Burleson, with the
fraudulent intent then and there of him the said John Harris, to
deprive the said J. J. Burleson of the value of same and to appro-
priate the same to the use and benefit of him. the said John Harris.
On a trial had in the court above named on the 11th day of March,
1908, the jury found appellant guilty and assessed .his punishment
at confinement in the penitentiary for a term of five years.

The facts of the case are very unusual, and are, indeed, strangely
singular. Burleson was shown by the evidence to have been quite
an old man, almost seventy years of age. He resided some sixteen
or eighteen miles from the town of Big Springs on a farm and had
suffered some years before from something in the nature of paralysis
and perhaps some form of rheumatism. The rigid cross-examination
to which he was subjected impresses us that his memory as to
many of the details of the events described by him was very hazy
and uncertain, though his testimony touching the substantial facts
of the robbery was not so variant or confusing as perhaps to destroy
the effect of the weight to be given the evidence. He testified in
substance that on the day of the robbery the appellant, who had
been working for him, and to whom he had recently sold his cotton
crop, came to his place and after some conversation said to. him that
he had some liniment at his house, and that if he, Burleson, would
come down he would rub his back; that he went to appellant's house
with him and sat down by the stove; that appellant presented a
gun that he had just before borrowed from Burleson, and said to him,
in substance, that he had tried to disgrace his family and that he had
to pay for it and demanded his money; that he finally produced his

pocket-book, which contained a ten dollar bill and some silver, and appellant's wife took the pocket-book and got the money out of it, and that appellant then asked him for a check which had recently been given him in payment of some corn, and that this was obtained from the pocket-book by appellant's wife. Thereupon, appellant said to him that he had to give him a check for one hundred dollars which he had in the bank at Big Springs; that he could not write and that appellant turned the gun over to his wife, who still held it pointed on him, and that appellant wrote the check for one hundred dollars and compelled him, Burleson, to sign it, and that after this, and by the use and exhibition of the weapon, accompanied by threats of taking his life, appellant compelled him to get in the wagon on the front seat, with his wife driving and appellant sitting or standing behind him with the gun, and go to the town of Big Springs, some sixteen or eighteen miles distant; that after they got to Big Springs, which was at about 12 o'clock, or probably sometime thereafter, they drove to near where the bank was and appellant and Burleson went into the bank, Burleson got the one hundred dollars, came out to the front of the bank and gave it to appellant; that after this they went around town together, going upstairs to one place, and later to a saloon where they took a drink, and after something like a half hour or an hour, got in the wagon and drove home. On this drive appellant and Burleson sat together in the seat; that after they had returned to Harris' house appellant compelled him to give him, appellant, a bill of sale to a couple of mules that he owned, and that after this was done, and after refusing the request of Burleson to turn his gun over to him, Burleson was permitted to go to his house, but during all this time Burleson says that he was in fear of his life and did and performed all and singular the acts and things, which we have briefly stated here, in fear and on the belief that his refusal so to do would end in his death.

In his charge to the jury the court instructed them, among other things, that if appellant "did then and there fraudulently take from the person and possession and without the consent and against the will of the said J. J. Burleson twelve dollars in money of the value of twelve dollars; and you further believe that he *continued* to put the said J. J. Burleson in fear of his life and bodily injury, and did then and there fraudulently take from the person and possession and without the consent and against the will of the said J. J. Burleson one hundred dollars in money of the value of one hundred dollars, the said property then and there being the corporeal personal property of the said J. J. Burleson, with the fraudulent intent then and there of him the said Jno. Harris to deprive the said J. J. Burleson of the value of the said twelve dollars and the said one hundred dollars, and to appropriate the same to the use and benefit of him, the said John Harris, then you will find the said John Harris guilty of robbery and assess his punishment at confinement

in the State penitentiary for life, or for a term of not less than five years."

The questions raised on appeal are presented under many forms, are well raised, and on oral argument before the court were discussed with such clearness .as to be of much assistance to us in their determination. Except the. last matter discussed, all the questions revolve around the same general subject. The first four bills of exceptions relate to,· and present different views and aspects of, the same general question. It is stated in the first bill of exceptions that when the State had begun its testimony it put as its first witness on the stand the alleged injured party, J. J. Burleson, and the said Burleson testified as follows: "The defendant told me that morning that he had some liniment, and if I would come to his house he would rub my back, and I went to his house and went in and took a seat by the stove and talked to his wife until he came; at the time of telling me to come to his house defendant had borrowed my shotgun; I had been to his house but a very short time when defendant came to the door opposite where I was sitting and squatted down on his feet in front of the door and threw down on me and right in my face the shotgun he had borrowed from me, which was loaded with duck or rabbit shot, and said to me, 'you God-damned old son-of-a-bitch, you have tried to disgrace my family and you have got to pay for it. I want your money.' I said to him, Mr. Harris, what do you mean? what have I done? And he said, by God, I want your money, and he came in the house, still holding his gun cocked on me, and told me to hand over my money. to his wife, and I pulled out my purse and handed it to her, and she took out of it a ten dollar bill and a silver dollar and some smaller silver change and kept possession of it and handed the purse back to me. The defendant then said to me, you have got a check, by God; hand that over, and I turned over to him the check for $47.50 that had been given me on the First National Bank of Big Springs, Texas, by a party some days before and which the defendant knew of. He then said, you have got $100 in the bank and I must have that; and. I had one hundred dollars in the bank, and he then said, write me, a' check on the bank for that hundred dollars, and I told him I: could not write, and he said, by God, he could, and he then handed the gun, which was still cocked, and which, up to this time, he had' kept leveled at me, to his wife, and she then held it on me while the defendant sat down and wrote out a check on the bank for one ' hundred dollars and told me to sign it, which I did. After signing this check he told me, by God, I had to go to Big Springs with him to cash the check, and that he was going to take me along in his wagon and he was going to take the gun  long, ..nd ii on the road there or while in Big Springs or on the way back I, in any way tried to raise an alarm, or give him away, or not do just as he told me to that he intended to kill me, and he made me get in his wagon

and his wife sit on the front seat by me and did the driving, and he and his girl sit behind where he had the shotgun and his pistol, which, in the house, I had seen him, before we started, place in the waistband of his pants, and in that way we came to Big Springs, a distance of about sixteen miles, and drove the wagon to a point near the West Texas National Bank, across the street just opposite the First National Bank, when he made me get out and he went right along with me and we both entered the outer door and into the First National Bank, and the defendant stood somewhere close to the other door and I went either to the Cashier's window or into the private office of the President or through that on into the main room where the employes worked, and had Mr. Price, the cashier, to write me out a check on my account for one hundred dollars and I signed it and Mr. Price gave me the one hundred dollars and I went on out and the defendant was standing about where I had left him and I gave him this one hundred dollars and he put it in his pocket, and then told me to come with him, and we went down the street about fifty yards, perhaps, and at the foot of a stairsteps there we met the defendant's wife and child and we all went up the steps to the upstairs and stood around there a few minutes when the defendant and me came down the steps and crossed over the street and went into John Bond's saloon, where the defendant bought a bottle of whisky, and then we went out and walked on up the street to where the wagon was, and in passing a bank corner, Mr. Nowlin spoke to me, at which time the defendant said 'come on,' and I went on with him and we got in the wagon, the defendant getting in on the seat with me and the wife and child sitting behind and we drove back home, a distance of about sixteen miles, and when we got home and got out of the wagon the defendant said I had to give him a bill of sale to one pair of my mules, and the defendant took some paper and a pencil, and leaning against a wagon bed, wrote out the bill of sale offered in evidence and I signed it and he put it in his pocket, and then he told me I could go on over to my house, telling me in parting that if I ever said anything about what occurred, or in any way give him away, that he would kill me.

"The witness testified that all of the acts and things of every kind covered by this testimony above from the time Harris threw the gun down on him in the morning at his door until he got back home and signed and delivered the bill of sale, was done and submitted to by him by reason of the assault made upon him and the threats towards him of the said Harris, and for fear that if he did not obey him in all of the particulars named that the said Harris would kill him, as he had threatened to do, and that none of the acts were done with his consent, but all against his consent and against his will and through fear of his life from the acts and threats of Harris, and that in going to Big Springs, and going to the different places named in his testimony above, and doing all the acts

stated in his testimony while there, and in coming back home and in signing and delivering the bill of sale, he was under arrest and duress and was obeying the threats and directions of the said Harris through threats on his life, and that while at Big Springs, and after Harris had gotten the money, he asked the said Harris as he had got the money to release him and let him go, which Harris refused to do, but with further threats on his life told him that he had to keep with him and go back home with him, and that if he tried to get away, or made any effort to get away, he would kill him.

"And at the time of the testimony of the said Burleson, as above stated, the district attorney and private counsel for the State engaged in said prosecution, agreed and stated to the court that in fact the twelve dollars in the first count in the indictment alleged to have been taken from the said Burleson was the twelve dollars taken out of his purse in the defendant's house by the defendant's wife, and the one hundred dollars alleged in said count to have been taken from said Burleson was the one hundred dollars got by said Burleson on his check in the First National Bank at Big Springs and handed to the defendant, as shown in his testimony, and that the indictment in his case in the count on which this trial is being had by the use of, the twelve dollars and the one hundred dollars alleged to have been taken, covered and intended to cover the respective takings of said sums as is above stated." Thereupon, at the conclusion of this testimony, appellant moved the court to quash, set aside and dismiss the said first count on which this prosecution was being had, because, as shown by the evidence and the admitted facts, there is included within the same two separate and distinct offenses, and that such separate and distinct offenses can not be prosecuted against the defendant in one trial under said count in the indictment. This being overruled, counsel for the appellant then moved the court to require the State to elect on which one of said two separate offenses the State would prosecute him, so that in this case he might only be prosecuted for one of said offenses, and might be informed as to which one of said offenses he was being prosecuted for; or, in the event the court would not so require such election that the court would make such election by announcing that he would only submit one of said offenses in his charge to the jury and would state which one of said claimed separate offenses he would submit, in order that the defendant might be informed as to which offense he was on trial for, and that he might know what evidence as to other or different claimed offenses, that he might object to the evidence being introduced against him on this trial, stating to the court that he desired to object to the introduction of any evidence of any other or further offenses than the evidence of the one on which he is upon trial, and that the evidence of the said Burleson discloses three separate offenses, and unless he knew just which offense would be submitted, he would not know how to object to the evidence of the other offense, and that

the evidence of no other offense than that for which he was on trial would be admissible against him. The court refused to grant the motion and refused to state or indicate that he would by his charge submit the matters covered by Burleson's testimony as separate offenses, or treat them as separate offenses, or submit, in his charge, one of said transactions as a separate offense. This motion being overruled, counsel for appellant thereupon moved the court that insofar as the charge submitted to the jury on what the defendant claimed to be the separate offenses committed as to the twelve dollars that it withdraw and strike out from the consideration of the jury any and all of the evidence of the said Burleson that related to what the defendant claimed to be the separate offense committed by the taking of the hundred dollars at Big Springs, Texas, and what he claimed to be the separate offense committed on the return home in the taking of the bill of sale; and insofar as the court intended to submit, what the defendant claimed to be a separate offense committed in the taking of the hundred dollars at Big Springs, that the court strike out and withdraw from the consideration of the jury all the evidence of the said witness relating to what he claimed to be the separate offense in taking the twelve dollars in the defendant's house, and all evidence in relation to the taking of the bill of sale on the return home, because and for the reason that as to said matters, or other claimed separate offenses, the same were not admissible on the consideration by the jury of the offenses as above respectively stated and as to the same were separate and distinct offenses and were not res gestae of either of the other said offenses nor necessary to identify the defendant, nor necessary to explain and illustrate the intent with which either of said other offenses were committed, but as to any particular offenses submitted, all three of said transactions were distinct and independent crimes, not a part of the res gestae of each other, nor so connected with each other as to be illustrative of the intent of the defendant in committing either one of said offenses and that the intent of the defendant could not be a question at issue, and that such evidence was calculated to and would prejudice the defendant before the jury in making his defense and would inflame the mind of the jury against giving him a fair and impartial trial in arriving at the conclusion as to whether or not he was in fact guilty of the offense submitted, and each of said matters and the evidence so erroneously submitted would be considered by the jury as evidence of his guilt of the particular transaction of which he would be placed on trial. This motion was by the court overruled, and thereupon and in connection therewith counsel for appellant asked the court that insofar as the evidence of the said Burleson relating to each one of the said claimed distinct offenses, that he would in his charge to the jury instruct the jury that in considering the defendant's guilt or innocence as to either one of said offenses claimed to be distinct crimes by him, as would be, and were after-

wards submitted by the court to the jury, that the court should limit the jury in its consideration of the said evidence as to said other offenses and instruct them that they could not consider the same for the purpose of determining the fact of his guilt as to the twelve dollar transaction, and could consider the same alone for the purpose of determining the intent of the defendant, if they believed from the evidence that it would illustrate said intent, or prove the identity of the appellant, if his identity was in question, and that the court should limit the consideration of the jury to the only purpose for which they could consider the same as contemporaneous offenses. A similar charge was requested to be applied to the matter of the alleged robbery of the one hundred dollars at Big Springs as well as the act and transaction touching the securing of the bill of sale, which motion was by the court overruled. The action of the court and the error claimed to exist therein is well analyzed and stated in the argument filed herein on behalf of appellant. It is in part as follows: "There was no question of identity at issue, either as to the identity of the defendant or the identity of the property alleged to have been taken. There was no question at issue as to the intent of the defendant in the acts alleged. Each were too widely disassociated in point of place, time, and all other elements, for one to be a part of the res gestae of the other. The proof of the commission of either one of them does not of itself furnish any evidence as to the commission of either of the others, and neither is a component or relative circumstance connecting the defendant with the commission of either of the others. There was no question of system, and the matter of system, as meant by the decisions, could not apply. According to Burleson's testimony a separate and distinct robbery was committed upon him early in the morning at appellant's residence, eighteen miles from Big Springs, and this robbery committed in appellant's house early in the morning is complete within itself, a perfected crime, and does not depend upon, or require any aid from any of the other matters about which Burleson testified. Having completed said robbery, and being fully guilty of a completed and perfected crime, the appellant (according to Burleson's testimony) committed the further crime of false imprisonment as defined by the statutes of this State in taking charge, under threats of death, of Burleson's person, and holding him under duress and arrest and taking him to the town of Big Springs, eighteen miles distant and which travel covered a period of several hours. Arriving at Big Springs, and having committed another distinct crime, that of false imprisonment, the appellant (according to Burleson's testimony) exhibits to him and threatens to use deadly weapons, and by such assault and violence and use and exhibition of said deadly weapons commits another separate and distinct crime by compelling Burleson to go into the bank and get him one hundred dollars out of the bank and delivering it to the appellant. Now, this robbery committed at the bank in order to make

it an offense complete within itself, required no aid or assistance from any of the matters that preceded it or followed it. Waiving the question as to whether a separate offense of false imprisonment was committed in taking Burleson back eighteen miles to appellant's home that evening, or whether that and the arrest during the entire day was one offense, it does appear that the robbery committed on Burleson, according to his testimony, of the bill of sale to the mules late that evening at appellant's house, after they had spent several hours in traveling eighteen miles from Big Springs to appellant's home, was a separate offense requiring no aid to make it such from any of the facts or transactions preceding it. Why then can it be said that on a trial for either of these offenses that evidence of the other offenses are admissible? And if for any reason these other offenses can be said to have been admissible, why should the court refuse to instruct the jury as to the purpose for which they could be considered? It is true that the jury gave the defendant the lowest punishment, but the recital of this terrific abuse and long continued criminal aggression on Burleson may have been forceful in the minds of the jury in arriving at his conviction. It is a part of the philosophy of human nature that the very atrocity of a crime by prejudicing the mind against the alleged author becomes a powerful adjunct in bringing the mind to a belief in his guilt." It will be noted, as stated above, that the questions raised are presented in many forms and from different angles. We have been somewhat surprised at how slight is the discussion in the books of what constitutes separate offenses and of what may constitute one and the same offense. A discussion of these matters has usually arisen in cases where pleas of former conviction or former acquittal have been interposed and in respect to the doctrine of carving, as understood in this State. However, it seems to us on principle, and we find no authority to the contrary, that it is clear that the robbery, if there was a robbery, of the twelve dollars at appellant's house was in and of itself a complete and completed transaction for which, under a proper indictment and on sufficient testimony, a conviction would have been as inexorable as any fact can be and a conviction which, under the law, must have been held sufficient and authorized. It seems equally certain that on a proper charge and on legal proof that the fact of the robbery of one hundred dollars at Big Springs was, of itself and within itself, a complete and completed transaction. It is also true that unless defeated by the fact that there was no actual possession taken thereof, the transaction of the taking of the mules by appellant was a complete and completed transaction for which on a proper charge a conviction could have been sustained. It seems clear in reason, and this is well supported by authority, that in view of all the circumstances of the transaction in respect to the one hundred dollars taken at Big Springs, that it may be competent and would be permissible, if the charge of robbery had been laid in respect to

that transaction, to have introduced in evidence the former robbery of twelve dollars, the antecedent circumstances, the putting in fear of his life, and the arrest and detention of Burleson and all the circumstances, as bearing on or having a relation to the transaction at Big Springs, and as, in a measure, explanatory of Burleson's failure to make an outcry for the reason that the transactions at appellant's home preceded and led up to the robbery at Big Springs. We think that the indictment on its face in showing the transaction not to be severable and distinct, when the proof disclosed this fact, the indictment would not necessarily be defeated, but it is equally clear that on timely demand, the court should have required an election. Nor can it be said that because appellant received the lowest punishment allowed by law that he was not injured by the failure of the court to require an election. Where the statute gives a legal right and where the insistence on same is timely made, the court ordinarily will not speculate as to what result of an invasion or deprivation of such right would amount to. Again, if we are correct in what we have said, it would seem necessarily to follow that if under any condition of affairs, proof of the separate and severable offenses were admissible that they should have been limited, as requested by counsel for appellant, but as we view the matter they were not admissible as presented for any purpose. It is inconceivable that if the jury had believed Burleson's testimony in respect to the taking at his home, that they could have doubted for one moment the intent and purpose for which his money was taken from him. There was no question of the identity in the case, as stated by counsel for the appellant, either of the person taking or the thing taken. It often happens that in developing the particular facts of the charge raised against one on trial that it is essential in developing the res gestae, the details of the particular transaction, that proof of some related matter, be put in evidence to fully and clearly inform the jury in respect to facts of the crime charged, but that is not true in this case—certainly not true in respect to the robbery of the twelve dollars at appellant's house. We think, therefore, and hold, first, that under the charge, under the facts developed that there were two separate offenses; that an election should have been required, and if such election should hereafter be made in respect to the alleged robbery of the twelve dollars, the proof should be confined to that, and that alone, and that no testimony should be heard touching the robbery of the one hundred dollars or concerning the bill of sale to the mules. We hold again that if the State elects to try with respect to the robbery of one hundred dollars at Big Springs that proof of the transaction in respect to the twelve dollars as well as the continuing facts up to the date of the robbery and on the journey to Big Springs, may be received in evidence, but when received should be limited by proper instructions to show the intention and purpose of appellant and as explanatory of the acts and conduct and state of mind of Burleson.

The transaction in respect to the mules after they left Big Springs would not seem to be, if we are correct, admissible in any event.

Complaint is made of the following paragraph and portion of the court's charge: "Now, bearing in mind the definition as given you in the preceding paragraph, if you find from the evidence that John Harris, on or about the 4th day of February, A. D. 1907, in Howard County, Texas, did not unlawfully and wilfully make an assault upon the person of J. J. Burleson and did not put the said J. J. Burleson in fear of his life and bodily injury, and did not then and there fraudulently take from the person and possession and without the consent and against the will of the said J. J. Burleson, twelve dollars in money of the value of twelve dollars, and one hundred dollars in money of the value of one hundred dollars, and if he did take it, he did not do so with the fraudulent intent then and there of him, the said John Harris, to deprive the said J. J. Burleson of the value of same and to appropriate the same to the use and benefit of him, the said John Harris, then you will acquit him." This instruction is followed immediately by a charge to the effect in substance that the appellant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and that in case the jury have a reasonable doubt as to the guilt of the defendant they will acquit him and say by their verdict "not guilty." The correctness of the paragraph of the court's charge quoted above is challenged on the ground that same is erroneous in that it was not the law, and in order to acquit appellant the jury did not have to find from the evidence that he did not do all or either of said matters before they could acquit him, and that they did not have to find as a conclusion from the evidence any and all of said matters before they could acquit him, but on the contrary, under the law, the jury must find and believe from the evidence beyond a reasonable doubt that he did in fact do all of said things before they could convict him. Again, said charge was complained of and is alleged to be erroneous because if the jury, as a matter of fact, had found, as instructed by the court from the evidence, that John Harris did not do either one of the unlawful things recited in said charge, and each of which enter into and constitute the crime of robbery, and which crime can not be completed without the presence of all of said elements, then they should have acquitted appellant without reference to what they may have found with respect to the other ingredients of the offense, and that the charge was erroneous and hurtful in that under this charge the jury were instructed that before they could acquit appellant, they had to find from the testimony that he did not do all of said matters recited therein, and that it was necessary for them to find that he did not do each and every one of said matters before they could acquit him. Again, the paragraph complained of was alleged to be contradictory of the sixth paragraph of the court's charge which instructed the jury under what circumstances they would convict ap-

pellant and that these charges are so radically contradictory as to mislead and confuse the jury and in effect furnish them no legal standard whatever under which they could either convict or acquit appellant, and practically left the jury without any instructions whatever as to the law of the case applied to the facts in evidence. Under the authorities it is clear that the charge complained of is erroneous. Its vice is that it shifts the burden of proof and requires the jury to believe affirmatively as true all the facts therein contained before they could acquit appellant. A charge not unlike that is considered by this court in the case of Johnson v. State, 29 Texas Crim. App., 150, 15 S. W. Rep., 647. In that case the court instructed the jury as follows: "If you believe from the evidence that the defendant, acting either alone or in concert with Jeff Wood, did not poison Elizabeth Rucker, as explained in paragraph three, or if you believe that deceased was poisoned by accident or by her own voluntary act, or if you believe that deceased died from natural causes, or if you believe that deceased was poisoned by some other person than the defendant, acting alone or in connection with Jeff Wood, then you will find the defendant not guilty." In passing on this charge the court said: "We think the paragraph is subject to the exception that it requires the jury to believe from the evidence the existence of the conditions which entitled him to acquittal. It virtually requires the jury to believe from the evidence that he is innocent before finding him not guilty, whereas the correct rule is that the jury must presume his innocence until his guilt has been established by the evidence beyond a reasonable doubt. If the jury entertained a reasonable doubt upon the whole evidence of the defendant's guilt, it was their duty to acquit him, although they might not believe from the evidence the existence of the facts and conditions, or any of them, mentioned in said paragraph. It is true that in concluding his charge the learned judge gave the usual instruction as to the presumption of innocence and as to reasonable doubt, and ordinarily such instruction is sufficient, but in this case we do not think it was sufficient to correct and counteract the error in paragraph 5. Said paragraph would have been unobjectionable if it had merely instructed that if the defendant, either alone or in concert with Wood, did not poison the deceased, or if deceased was poisoned by accident, from natural causes, or was poisoned by some other person than the defendant, or the defendant and Wood acting together, defendant would not be guilty. The vice of the paragraph is in requiring the jury to believe from the evidence that some one of said conditions existed in order to warrant a verdict of acquittal because thereof." The charge of the court here considered is, it seems to us, quite as objectionable as the charge discussed in the Johnson case, supra, in that it shifts the burden of proof, and has the added and further objection that, as framed, it seems to require the jury to believe all the facts therein grouped before appellant would be entitled to an acquittal. The rule here laid down is so

well supported by the authorities that a further discussion seems to be unnecessary. Moore v. State, 28 Texas Crim. App., 377, 13 S. W. Rep., 152; Smith v. State, 9 Texas Crim. App., 150; Robertson v. State, 9 Texas Crim. App., 209; Blocker v. State, 9 Texas Crim. App., 279; Wallace v. State, 9 Texas Crim. App., 299; Graham v. State, 61 S. W. Rep., 714; Henderson v. State, 51 Texas Crim. Rep., 193, 101 S. W. Rep., 245, and Stewart v. State, 51 Texas Crim. Rep., 223, 101 S. W. Rep., 800, and authorities might be multiplied indefinitely.

For the errors pointed out the judgment of conviction is set aside and the cause is remanded for another trial.

*Reversed and remanded.*