## WYATT WINDHAM v. THE STATE.

### No. 617. Decided May 18, 1910.

**1.—Burglary—Evidence—Other Offenses.**

Upon trial of burglary, where the indictment alleged that the defendant and another burglariously, in the night-time, with a gun and pistol, fired into a dwelling house with intent to commit murder, it was reversible error to admit in evidence that some three months after this occurrence the defendant was seen around the same premises in the night-time making threats against the party whose house had been thus burglarized. Following Crass v. State, 30 Texas Crim. App., 480, and other cases.

**2.—Same—Evidence—Declarations of Third Parties—Other Transactions.**

Upon trial of burglary, testimony as to other transactions occurring after the alleged commission of the offense, with reference to third parties, was inadmissible.

**3.—Same—Evidence—Circumstantial Evidence.**

Upon trial of burglary, where the State relied upon circumstantial evidence it was proper to admit testimony with reference to the conduct of defendant and his codefendant on the night they were alleged to have fired into the said house, and to show the similarity of tracks made at different times.

**4.—Same—Hearsay Evidence—Harmless Error.**

Where, upon trial of burglary, testimony was admitted that other parties passed by the alleged house after the alleged shooting therein by defendant and his companion, which was wholly immaterial and could not have injured defendant, there was no reversible error.

**5.—Same—Charge of Court—Aggravated Assault.**

Where defendant was indicted for burglariously shooting into a house with intent to commit murder, it was not necessary for the court to define the lower grades of assault.

Appeal from the District Court of Shelby. Tried below before the Hon. James P. Gibson, Special Judge.

Appeal from a conviction of burglariously shooting into a dwelling to injure the occupant thereof; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Stephenson & Stephenson,* and *Brewer & Hooker,* for appellant.— On question of admitting act of other parties: Means v. State, 10 Texas Crim. App., 16; Dubose v. State, 10 Texas Crim. App., 230; Burke v. State, 15 Texas Crim. App., 156.

On question of admitting testimony of threats of defendant after commission of offense: Crass v. State, 30 Texas Crim. App., 480; Ball v. State, 44 Texas Crim. Rep., 489; Kessinger v. State, 71 S. W. Rep., 599; Cesure v. State, 1 Texas Crim. App., 19.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—Appellant has appealed from a conviction of burglary, his punishment being assessed at confinement in the penitentiary for three years.

Wyatt Windham, the appellant, together with Marion Gann, was indicted for burglariously in the night-time with a gun and pistol firing into the dwelling house of one A. G. Childress with the wilful intent with their malice aforethought to then and there kill and murder the said A. G. Childress. The appellant alone was placed upon trial resulting in his conviction as stated. From the statement of facts it appears that on the 28th day of September, 1906, about 9 o'clock at night prosecuting witness Childress was sitting in his house when a couple of parties rode by and shot into his house. However, the said Childress was not in the room at the time it was fired into. The witness rushed out of the house and discovered two parties riding off at a gallop. He went out and examined the tracks of the horses ridden by these parties and found the tracks made by one of the horses were small tracks, and the tracks of the other were large tracks shod in the fore feet. On the following morning defendant and Gann passed the house of the prosecuting witness, one of them riding a large horse and the other a small horse, and the witness went out and examined the tracks made on that morning by these horses and they corresponded with the tracks made on the night before. It seems that there was not the best of feeling between Childress and appellant previous to this. Childress had sent appellant word that he did not want him at his house, nor to visit his daughter. He did not know whether the appellant received the message or not. However, a short time thereafter the witness gave a little social entertainment at his house and appellant was not present, and he met appellant a few days thereafter and appellant would not speak to him. There were some other circumstances introduced by the State as to the whereabouts of the defendant and Gann on that night. They started from church in company with two or three other parties, all of them going by Childress' house, but defendant and Gann rode on ahead and shortly after they had gone the parties behind heard shooting in the direction in which they had gone right towards Childress' house.

On the trial of the case, over appellant's objection, the State was permitted to ask the following question of the witness Childress: "I want to ask you whether or not since this. occurrence, there that night, whoever it was, if you have seen Wyatt Windham in the night-time about your premises and have heard him make any threats in regard to yourself?" A. "Yes, sir. It was somewhere near three months; it was, I believe, on Christmas night, 1906. The shooting occurred on the 28th day of September, 1906. After this shooting into my house I heard the defendant make a statement and threats

against me, it was at night between 7 and 8 o'clock, maybe 8 o'clock; Levi Riddle and Pink Riddle and my family were there. I was out between my house and front gate. The house fronts north and there was a gate about fifteen steps north . . . and he, defendant, was in the road. Him and his father and a negro had been to San Augustine and they had stopped at Mr. Brown's and had trouble down there. They came on up to my gate and stopped out there and Wyatt says, 'Where is old Childress? the God-dam-son-of-a-bitch; let him show up tonight,' and then he says, 'I am going to shoot that light out,' and his father told him not to do it; he says, 'You are already in enough trouble.' The light was shining on the northeast corner of the house and could be seen plainly. When Wyatt Windham made that statement, I spoke to him, and said, 'Here I am.' " This testimony was objected to by the defendant for the following reasons: Because the State has charged him, the defendant, here with burglary, having shot in the house, located the time, place and manner of the commission of the same. Now then, they seek to prove different things and different offenses; that if he made any threats against this man in the manner stated it was a violation of law, and that this occurrence happened over three months after the shooting in the house and is a separate and distinct offense, in no way connected with the original shooting. This bill of exceptions is not in any sense qualified by the judge in his approval of same and it was insisted in the court below in motion for new trial, and is urged here that this testimony was highly prejudicial and was calculated to injure the appellant in the trial of the case in the court below. We are of opinion that the court in admitting this testimony committed error highly prejudicial to the defendant and for which the case will have to be reversed. A question similar to this came before this court in the case of Crass v. State, reported in the 30 Texas Crim. App., 480. In that case appellant was indicted for assault with intent to murder, alleging the offense to have occurred on the 19th day of December, 1890. The indictment was returned into court on February 19, 1891. The facts in that case were that the prosecuting witness had gone to bed and someone shot him through the window, and in that case the district attorney, over the objection of the defendant, was permitted to ask the prosecuting witness if any assault had been made upon him after the disturbance he had testified about, to wit: on March 7, 1891, after the return of the indictment, and he testified that on March 7, 1891, and subsequent to the return of the indictment some parties were around his house and fired off their pistols near his house and one of them, whose voice he recognized as that of the defendant Alf. Crass, halloed out, "Git from here!" This court in that case held that it was error and says: "Evidence which tends to connect the defendant with other offenses disconnected from that for which he is on trial must be excluded. Evidence of a disconnected substantive offense can

not be admitted in support of another offense; a fortiori, evidence of intention to commit another offense can not be admitted. Fore v. The State, 5 Texas Crim. App., 251; 1 Whart. Crim. Law, 647; Williamson v. The State, 13 Texas Crim. App., 514; Chumley v. The State, 20 Texas Crim. App., 547." And quoting from Greenleaf says: "It is an established rule which we take as the first rule governing in the production of evidence, that the evidence .offered must correspond with the allegations and be confined to the point in issue. This rule excludes all evidence of collateral facts, or those which are incapable of affording àny reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and moreover the adverse party, having had no notice of such a course of evidence, is not prepared to rebut it."

The court also erred in allowing the witness Brown to testify as to what occurred at his house on Christmas night and in allowing the witness Riddle to testify in support of Childress' testimony as to what occurred at his house.

There are numerous other bills of exception in the record to the admission of testimony, but we are of opinion that they are without merit. The State in this case was relying upon circumstantial evidence and it was proper and legitimate for the State to explore every avenue for the discovery of any facts that would throw light upon the matter. The conduct of defendant and Gann on the night of the shooting was a proper question of inquiry both before and after the shooting. Also it was legitimate and proper for the witness Childress to testify as to the similarity of the tracks made on that night to the tracks of the two horses that passed his house the next morning.

It was objected, and the objection preserved in a bill of exceptions, that the court allowed the witness Childress to testify that there were other parties passed by his house after the shooting and while he was looking at the tracks. Counsel for appellant contends that the court should have excluded this as being the acts and declarations of other parties in the absence of the defendant, and it is insisted on here that the case should be reversed because the court permitted this testimony, whether it was injurious to the defendant or not. This court will not reverse a case because hearsay testimony has been introduced in the trial of a case about a matter that is wholly immaterial and could not possibly by any conjecture injure the appellant in the trial of his case.

It is contended that the court should have defined to the jury aggravated assault and simple assault so that the jury might have determined whether it was an assault with intent to murder. Appellant was not indicted for assault with intent to murder. He was

Vol. LIX. Crim.—24.

indicted for burglariously shooting into a house with intent to commit a felony, to wit: assault with intent to murder, and in order to define assault to murder it is not necessary to define the lower grades of assault. To shoot into a house at night and wound a person therein with intent to murder would be assault with intent to murder and because he does not hit, would not make the offense a lesser grade than a felony.

There are no other errors in the record of sufficient importance to require discussion, but for the error indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*