PAUL EDWARD DANIEL V. STATE.

No. 24050. June 25, 1948.

Hon. Owen M. Lord, Judge Presiding.

GRAVES, Judge, dissenting.

*Horace Kelly* and *J. A. Veillon,* both of Beaumont, for appellant.

*Jep S. Fuller,* County Attorney, *Ramie H. Griffin* and *J. S. Maida, Jr.,* Assistant County Attorneys, all of Beaumont, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

The offense is theft by false pretext of property over the value of fifty dollars. The punishment assessed is confinement in the penitentiary for a term of eight years.

The State's evidence is ample to show that appellant by false and fraudulent representations obtained from Ellen Harmon $241.40. There is no denial of the alleged false pretext resorted to in obtaining the money, nor is there any question as to the identity of appellant as the perpetrator of the offense. Appellant did not testify or offer any affirmative defense on any issue. No evidence was introduced claiming an innocent intent on appellant's part.

It appears that appellant had more than one scheme by which he sought to fleece honest and unsuspecting people. One was what is known as pigeon dropping, and the other was where he told negro women whose sons had been killed while serving in the United States Army that they were entitled to government bonds. In the instant case, he first tried his pigeon dropping scheme upon Ellen Harmon and when he saw that it would not produce the desired result, he then told her that he was employed by the First National Bank and had been working for said bank for the past twenty-five years; that his boss had bonds for soldiers left overseas and since she was the mother of a boy who was killed, she was entitled to some of the bonds; that his boss had sent him out looking for folks who were entitled to them. He then told a woman, who no doubt was his confederate in the scheme, to go and get her bonds so as to convince Ellen Harmon that the bonds were really there. He further told her that before the bonds would be delivered to her she would be required to put up $700.00. The injured party told him she only had $116.40 in her purse and $125.00 left in the bank. He then suggested that she draw the money out of the bank and put it with the $116.40 which would make $241.40 and he would furnish the balance to make $700.00. The confederate left but soon returned with some bonds and then the injured party gave appellant the $241.40 upon his promise that he would get her the bonds. He departed and she did not see him any more until some time later when she saw him on the same bus that she was riding, at which time she notified the police. Appellant was subsequently arrested and charged with the offense. While he was confined in jail, she went there and picked him out of a bunch of six or eight other negroes as the one who had obtained her money in the above stated manner. The teller in the bank corroborated her testimony relative to the two separate withdrawals from the bank on the same day.

Appellant's first bill of exception discloses the following occurrence: The State called one Willie Mae White as a witness and proved by her that within a few minutes after she had

been engaged in a conversation by an unknown negro woman, appellant appeared and said that he had found a purse which a white man had dropped as he was getting in his car; that he, appellant, picked it up; that he wanted to give them some of the money since they saw him find it. Willie Mae told him she wasn't interested, but he insisted that they go with him, and they did go with him to the corner of Bowie and Main Streets where he gave the purse to the unknown woman and said there is $2,100.00 in it which he desired to divide among them equally. He suggested that one of them go to his boss man and have him divide the same in three equal parts. The unknown woman took the purse and left but soon returned with a bag which she claimed contained Willie Mae's part of the money; that her money was in the purse, but that she, Willie Mae, would have to put up some money for security. However, Willie Mae did not have any money. They then told her to go get some money; that they would meet her at the Post Office. Willie Mae went to get some money, but she did not see him any more and he did not get any money from her. Appellant objected to this testimony on the ground that it tended to show an extraneous offense; that it was immaterial and no part of the case on trial. The court overruled the objection and admitted it on the theory that it tended to show design and intent.

We think the trial court fell into error in admitting this testimony. It is true that ordinarily evidence of extraneous offenses is not admissible, but in Branch's Ann. Tex. P. C., Sec. 166, p. 98, an exception is stated as follows:

"When an extraneous crime or other transaction is a part of the res gestae, or tends to show intent when intent is an issue, or tends to connect defendant with the offense for which he is on trial, proof of same is admissible."

The transaction with Willie Mae White was no part of the res gestae of the offense against the Harmon woman. There appears no connection one with the other. No issue was made by the evidence as to appellant's intent in obtaining the Harmon woman's money. The transaction with the White woman must have been admitted by reason of the sheer fact that the charge in the indictment against appellant for the offense for which he was on trial involved his intent. We can not give assent to the proposition that where intent is an element of the offense charged against accused the State may prove in developing its case-in-chief extraneous offenses against accused involving a similar intent, although accused makes no issue by the evidence

of an innocent intent in the transaction for which he is on trial. To allow this would be at variance with prior holdings of this court on the subject.

This is illustrated quite clearly in the two cases of Bink v. State, the first reported in 48 Tex. Cr. R. 598, 89 S. W. 1075, the second in 89 S. W. 1077. The first case involved a fraudulent transaction in which Bink and a companion obtained money from one Chatman by falsely representing that they were conveying the corpse of a relative on the train. The evidence was undisputed as to the method used in deceiving Chatman and obtaining money from him. It was not controverted by Bink in any way. In this first trial the State over objection proved by the witness Holder that Bink and his companion had swindled him (Holder) in the same manner. Admitting in evidence the Holder transaction was held error. In the second Bink case the prosecution was for swindling Holder, and over objection evidence of the Chatman transaction was admitted, and held error. Davenport v. State, 49 Tex. Cr. R. 11, 89 S. W. 1077, is also directly in point. Davenport was Bink's companion in the swindle.

In Gray v. State, 77 Tex. Cr. R. 221, 178 S. W. 337, the judgment of conviction was at first affirmed, but upon rehearing was reversed. The statement of the law in the opinion on rehearing is so clear, and citation of authorities so pertinent, we quote therefrom as follows:

"In a case of theft, it must be shown that the property was taken with the intent to deprive the owner of its value, and with the intent to appropriate such property to the use and benefit of the person taking same. But it is only necessary to prove that the property was taken, and that the accused took it and had it in his possession. Under such a state of facts our law presumes the intent to deprive the owner of the value of it, and the intent to appropriate it to the use of the taker, *unless the evidence elicited on the trial raises the issue that it was taken under a claim of right, by mistake, or some other innocent motive, showing a lack of intent to take and appropriate another's property. If the evidence raises such an issue, then evidence of similar offenses is admissible to rebut this evidence of innocent intent.* In those cases which hold other offenses admissible, it is shown that it is only in those cases where the evidence adduced on the trial raised the issue that there might be no guilty intent that evidence of other offenses became admissible and for that reason. Galbraith v. State, 41 Texas, 567;

Long v. State, 11 Texas App., 381; Davidson v. State, 12 Texas App., 214; McCall v. State, 14 Texas App., 353; Holmes v. State, 20 Texas App., 509; Harwell v. State, 22 Texas App., 251; Kelley v. State, 31 Texas Crim. Rep., 211; Fielder v. State, 40 Texas Crim. Rep., 184; Stanfield v. State, 43 Texas Crim. Rep., 10; Lynn v. State, 53 Texas Crim. Rep., 375. Cn the other hand, it seems to be the well settled rule in this State, when the evidence adduced on the trial leaves no question as to intent of the accused in doing the act complained of, *proof of other offenses, even though of similar character and kind, is not admissible on the issue of intent.* Harris v. State, 55 Texas Crim. Rep., 469; Davenport v. State, 49 Texas Crim. Rep., 11; Clark v. State, 59 Texas Crim. Rep., 246, 128 S. W. Rep., 131; Bink v. State, 48 Texas Crim. Rep., 498, 89 S. W. Rep., 1075; Johnson v. State, 57 Texas Crim. Rep., 488; Miller v. State, 59 Texas Crim. Rep." (Italics ours.)

See also Bowman v. State, 70 Tex. Cr. R. 22, 155 S. W. 939; Branch's Ann. Tex. P. C., Sec. 166, p. 99 and 100.

The same principle is recognized and given application in both the original opinion and upon rehearing in Watson v. v. State, 146 Tex. Cr. R. 425, 175 S. W. (2d) 423.

To approve the admission of the evidence of the White transaction would commit this court to the proposition that if an accused is on trial for assault with intent to murder A. and accused by evidence tenders no issue of an innocent intent, and in no way by evidence controverts the State's case, the State may nevertheless put in evidence the fact that accused also assaulted B. with intent to kill him, and likewise C. and D., although the transactions are not res gestae of the one on trial, and have no apparent connection with each other. And so with every other offense where intent is an element.

This doctrine is unthinkable, and contrary to the principle that an accused be tried on the merits of the case then before the court.

Exceptions to the rule are well recognized, but they are not present in the case before us.

Having reached the conclusion that the judgment must be reversed for the error in admitting evidence of the transaction with Willie Mae White, we think a discussion of appellant's bill of exception No. 2 is unnecessary.

For the error pointed out the judgment is reversed and the cause remanded.

GRAVES, Judge (dissenting.)

This reversal is based on the fact that the State proved a further act of "pigeon dropping" by appellant on another party, which act, however, did not result in any offense, the intended victim not having again seen the appellant and not having surrendered any money to him. The "pigeon dropping" effort upon appellant's part had already been proved by the testimony of the witness, Ellen Harmon, the woman who lost the money, and same was not objectionable, it being part of the res gestae. However, such pocketbook scheme was not successful, Ellen Harmon not agreeing to a division of the supposedly found funds. The proof of the incident with Willie Mae White was also unsuccessful, she not making connection with her part of the money, but it does seem to me to be the system and design under which appellant operated. I, therefore, say it was not an extraneous crime at all, appellant obtaining no money from either intended victim by means of the pocket-book. I do say that appellant's method, system and design in approaching and interesting his victim in the supposedly found pocket-book was the same and showed his intent to steal, as well as showed the falsity of his pretext that he offered in order to get these negro women to exhibit and hand over to him their money. If there was no intent to steal, there was no offense; if the pretext was not false, there still was no offense. All these things had to be proven to the jury. One "pigeon dropping" matter having been shown to the jury without objection, I am unable to say that the showing of another similar pocket-book episode was reversible error, no offense having been proven in either one of such efforts.

I, therefore, respectfully dissent from the opinion of my brethren.