**Cliff STEWART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38755.**

Court of Criminal Appeals of Texas.

Dec. 1, 1965.

Rehearing Denied Feb. 2, 1966.

Billy Hall, Littlefield, for appellant.

Alton R. Griffin, Dist. Atty., Jerome H. Schuetzeberg, Asst. Dist. Atty., Lubbock, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is cattle theft; the punishment, two years.

The indictment charged that on or about the 9th day of September, 1963, the appellant did fraudulently take five head of cattle from one Claud Keeton.

It was shown by the state's testimony that the prosecuting witness, Claud Keeton, owned and operated a livestock auction barn located some six or seven miles from Lubbock on Highway 84, referred to as the Slaton highway. Appellant and Murray Edwards were partners, operating under the name of E & S Cattle Company, of Clovis, New Mexico, and on occasion they purchased cattle at the Keeton auction sale.

During the first week in August of 1963, appellant and his partner attended a Keeton sale and purchased a number of head of cattle. The cattle, with tags bearing certain numbers pasted on their backs with gray glue, were put in pens #47 and 49. Before the cattle were moved the following day it was discovered that seven head of Mr. Keeton's cattle were in appellant's pens 47 and 49, and the same number of cattle purchased by appellant were in Keeton's pens. The seven head of Keeton cattle in appellant's pens had tags which had been placed on them with black glue and bore the numbers of the cattle which had been purchased by appellant. Gray glue was used to tag cattle at the Keeton auction, while black glue was used at a "Four C" auction in Clovis, New Mexico. Although informed of such fact, Mr. Keeton instructed his employees to load the cattle, including his seven head which had the tags switched. The cattle were then hauled away for appellant. Keeton subsequently sold the seven head of cattle which had been purchased by appellant and left in his pens and, as a result of the difference between their weight and quality and the weight and quality of his seven head which appellant had hauled away, he sustained a loss of $225. It was further shown that after the cattle were hauled away for appellant, some torn tags were found, in a chute, which had been on Keeton's cattle, and the tracks of two men were found leading from pens 47 and 49 to where a car had been parked in a field. Where the tracks stopped, a buyer's card, with black glue thereon, from the Gatesville Commission Company, was found which had either the name of appellant or his partner, or both, on it.

On September 9, appellant and Edwards attended a sale at the Keeton barn and purchased thirty-one head of cattle. These cattle, with tags and numbers on their backs, were put in pens 47 and 49. At 6 p. m., the last employee left the place after checking to see that the gates to all

pens were closed and that all the alleys were blocked. Around 6:30 p. m., appellant and Edwards were seen by the wife of the auction barn nightwatchman to enter the premises in an automobile and drive toward the loading chute. When her husband, who was deceased at the time of trial, walked toward them they drove in a circle and left the same way they had entered. Thirty minutes to an hour later, appellant and Edwards were seen by the witness to drive in front of her house.

At approximately 8 p. m., Ranger Captain Raymond Waters and other officers stationed themselves at various places of hideout in the pens and grounds. At such time the gates to the pens were closed and there were no cattle milling around in the alleys. Between 10 and 10:30 p. m., appellant and Edwards drove up in an automobile to the pens near the loading chute. After sitting in the car for five minutes, they got out and walked down the alleys. A noise was heard which sounded like a gate opening and the cattle began to mill around in the alleys. The two men then left.

Around 1:30 a. m., a truck drove into the premises and backed up to the loading chute. Appellant and Edwards also returned in their automobile. The lights at the pens were turned on. Appellant, Edwards, and the truck driver then proceeded to load cattle in the truck. After the cattle were loaded the lights were turned off and the truck was driven away. Later in the night the truck, loaded with thirty-one head of cattle, was stopped at Littlefield. It was then returned to the Keeton auction barn at Lubbock. An inspection of the thirty-one head of cattle showed that there were five head on the truck which had not been purchased by appellant the day before. Of the five head, four belonged to Mr. Keeton and the other had been purchased by the Lamesa Packing Company and was in Mr. Keeton's custody and possession when taken. An inspection revealed that there were five head of cattle in Mr. Keeton's pens that had been purchased by appellant. These cattle were inferior in quality and weight to the five head of Mr. Keeton's cattle that were in the truck. Tags which had been on cattle purchased by Keeton and the Lamesa Packing Company were found near pens 38, 47, and 49.

It was further shown by the state's evidence that appellant had no permission to take the cattle from the auction barn which he had not purchased and that three days later the truck was loaded with the thirty-one head of cattle which appellant did purchase, and were hauled to New Mexico.

Appellant did not testify but called as a witness Don Hollon, the truck driver, who testified that on the night in question, when he went to the pens to load the cattle, some of the gates were open and the cattle were in an alley. Hollon swore that he did not see appellant or Edwards pull any tags off cattle and that when he hauled the cattle away three days later, they looked like the same cattle he had previously loaded.

This testimony, together with other testimony brought out on cross-examination of certain witnesses by appellant, raised the defensive issue of mistake.

The court submitted the issue of appellant's guilt to the jury upon a charge on the law of principals and circumstantial evidence. The defense of mistake was also submitted. The court limited the jury's consideration of the evidence relative to the taking of the cattle by appellant in the first week in August, 1963, to the question of determining his intent in the transaction on September 9, when the offense for which he was on trial was alleged to have been committed.

The charge given by the court fairly submitted the issue of appellant's guilt to

the jury, together with his affirmative defense of mistake.

■ In refusing appellant's requested charge on entrapment, the court did not err, as such a defense was not raised by the evidence.

■ By their verdict, the jury rejected appellant's defense of mistake, and we find the evidence sufficient to sustain the judgment of conviction.

■ In permitting the state to make proof of the transaction in the first week in August, 1963, when appellant took the seven head of cattle, the court did not err. The issue of fraudulent intent in the transaction on September 9 was raised by appellant, his defense being that of mistake. The evidence of a prior and similar transaction by appellant, although it showed a separate offense, was admissible on the question of his intent. Daniel v. State, Tex.Cr.App., 212 S.W.2d 636; O'Brien v. State, Tex.Cr.App., 376 S.W.2d 833.

■ Nor did the court err in admitting in evidence state's exhibits #1, 2, 3, 4, and 5 over appellant's objection that he was not shown to be connected therewith. While the original exhibits do not appear in the record, the proof shows that state's exhibits #1, 3, and 4 were tags found near pens 47 and 49 which had been on cattle purchased by appellant and Edwards. Exhibit #2 was two parts of a tag, found near pens 38 and 49, which had been on a heifer, purchased by the Lamesa Packing Company, unloaded from the truck when it was returned from Littlefield. Exhibit #5 was the buyer's card, issued by the Gatesville Commission Company, found in the field, which had either the appellant's name or his partner's, or both, on it.

Other informal bills of exception presented by appellant have been examined and do not show error.

The judgment is affirmed.

Opinion approved by the court.