Samuel Alvin NANCE, Appellant,

v.

The STATE of Texas, Appellee.

No. 62997.

Court of Criminal Appeals of Texas, Panel No. 2.

March 30, 1983.

Ken McLean, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Alvin M. Titus and William Eggleston, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ONION, P.J., and CLINTON and TEAGUE, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the unauthorized use of a motor vehicle. V.T.C.A., Penal Code, § 31.07. The punishment was assessed by the jury at six (6) years' imprisonment.

At the very outset we are confronted with appellant's grounds of error that the court improperly admitted evidence of extraneous offenses over timely objection.

H.B. Sims, Jr., leasing manager of Frizzell Pontiac/AMC Leasing, Inc. in Houston received a telephone call on September 22, 1978 from an individual named Jan Myers, purportedly an employee and leasing representative of Southwestern Bell Telephone. As a result of the conversation, a leasing agreement was reached for a motor vehicle. Sims was informed appellant Nance would take delivery of the vehicle with proper identification and a letter of credit from Southwestern Bell. A lease contract was drafted. On September 25, 1978, appellant appeared at Sims' office. He had the documents requested. The insurance was verified through an Allstate insurance agent.

Appellant presented a letter to Sims, on Southwestern Bell stationery, authorizing him to take possession of the motor vehicle and to execute the lease on behalf of Southwestern Bell, who was to pay for the lease. It was signed by "Jan Myers." Appellant stated he would be using the vehicle in his engineering work for Southwestern Bell traveling between Houston and San Antonio. Appellant signed the leasing agreement. The vehicle was not ready and appellant made a second trip to the leasing company on September 25, 1978, and then took possession of a 1979 Pontiac Sunbird coupe. No payments were ever made on the lease, nor was the car ever recovered.

Randall Frizzell, owner of Frizzell Leasing, testified he was owner of the car involved, that he did not give the appellant consent or permission to take or use the car. He later made efforts to locate the appellant and the car from the information in the company files.

F.O. Bolton, a district staff security supervisor for Southwestern Bell, testified he first came in contact with the appellant on September 8, 1978 at the time of appellant's "absolute" termination of employment with Southwestern Bell. Appellant had been employed in the stenographic pool of engineering network services of Southwestern Bell. Bolton testified appellant was never authorized to lease vehicles before or after his dismissal at Southwestern Bell. He further stated Southwestern Bell had never had an employee by the name of Jan Myers.

Sonny Hanson, Allstate insurance agent, testified that on September 8, 1978, he was contacted over the telephone by a person named Sam Nance regarding insurance on a motor vehicle; that as a result he issued an insurance policy, and later talked with an employee of Frizzell Pontiac/AMC Leasing, Inc. on September 25, 1978, confirming the fact of insurance. He later cancelled the policy for non-payment of the premium.

After the presentation of this evidence the State, during its case-in-chief, over the timely objection of the appellant that there was no basis for the introduction of extra-

neous offenses, presented evidence of other transactions in some detail showing the appellant fraudulently obtained limousine and hotel services subsequent to the date of the alleged offense.

Appellant did not testify, did not offer any defense, and rested with the State. The State's direct evidence as to the alleged offense itself was not contradicted nor undermined by defense cross-examination.

This court has consistently held that an accused is entitled to be tried on the accusation made in the State's pleading and that he should not be tried for some collateral crime or for being a criminal generally. *Young v. State,* 261 S.W.2d 886 (Tex.Cr. App.1953); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), and cases there cited. See also *Ruiz v. State,* 579 S.W.2d 206 (Tex. Cr.App.1979); *Sanders v. State,* 604 S.W.2d 108 (Tex.Cr.App.1980). "Evidence of other crimes committed by the accused may be admitted, however, where such evidence is shown to be both material and relevant to a *contested* issue in the case." *Albrecht,* supra, at p. 100 (Emphasis supplied.)

In *Ruiz v. State,* supra, at p. 209, it was written:

"As stated in *Albrecht v. State,* Tex.Cr. App., 486 S.W.2d 97, the first order of inquiry in determining whether any evidence is admissible is a comparison of the probative value and the prejudicial or inflammatory aspects of the evidence, if any. In determining the admissibility of extraneous offenses, the court must look to the 'evidence which the State has to offer in proof of the essential elements of its case.' Id. at 101. When the element the State bears the burden of proof on can 'be inferred from the act itself' (Id. at 101), the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief. Finally, the decision whether the introduction of an extraneous offense into evidence is reversible error is an ad hoc determination based on the merits of each case."

In *Jones v. State,* 481 S.W.2d 900 (Tex.Cr. App.1972), this court held that reversible error was committed in allowing the State to prove the accused had committed an extraneous armed robbery where:

"... the intent [to commit the offense of robbery by assault for which the accused was on trial] was established by the appellant's brandishing a pistol and committing the robbery, and identity was positively established by four eye witnesses. Such testimony was undisputed."

In *Albrecht,* supra, at p. 101, this court wrote:

"In *Jones* we concluded that, even though the state had the burden of proving guilty intent and identity, the state could not permissibly use extraneous offenses as circumstantial evidence on these issues where the State had uncontroverted direct evidence on the issue of identity and guilty intent could be inferred from the act itself. In that type of situation, the prejudicial effect of the evidence far outweighs its relevance to any issue in the case; and the evidence of the extraneous offense serves only to establish the accused's bad character. See also, *Ball v. State,* 118 Tex.Cr.R. 579, 39 S.W.2d 619; *Windham v. State,* 59 Tex.Cr.R. 366, 128 S.W. 1130; *Harris v. State,* 55 Tex.Cr.R. 469, 117 S.W. 839."

In the instant case the State's evidence shows appellant was discharged by Southwestern Bell on September 8, 1978. On September 25, 1978, appellant appeared at the office of Sims, leasing manager of Frizzell Pontiac/AMC Leasing, Inc. He presented a letter on Southwestern Bell stationery to Sims authorizing a lease agreement and to take possession of a motor vehicle. It was signed by "Jan Myers" of Southwestern Bell giving an address in Brookshire to which the billing was to be sent. Sims had received a phone call from "Jan Myers" on September 22nd and had prepared the contract which appellant signed. Appellant took possession of the 1979 Pontiac and left. The lease payments were not made and the car was not recovered.

It was shown that appellant never had authority before or after the termination of his employment with Southwestern Bell to

 

lease motor vehicles. There was no Southwestern Bell employee named Jan Myers and no office at Brookshire. A person with the same name as appellant had arranged for car insurance and the insurance agent verified the same with Sims. Sims would not have released the car to appellant except for the representations made to him. Sims made a positive identification of appellant as the man to whom the car was released. Randall Frizzell, owner of Frizzell Pontiac/AMC Leasing, Inc., testified he did not give appellant consent or permission to take or use the car which he owned.

The elements of the offense of unauthorized use of a motor vehicle were clearly shown by the State's evidence prior to the introduction of the objected to extraneous offenses. The evidence was uncontradicted and it was not undermined by cross-examination. After presentation of the extraneous offenses, the defense offered no evidence. The introduction of the extraneous offenses was not justified or rendered harmless by anything that occurred after their introduction.

The State's only argument on appeal is that the extraneous testimony was admissible to show his fraudulent scheme. The proof offered as to the alleged offense clearly showed the fraudulent scheme and the lack of consent on the part of the complainant. The extraneous offenses were not needed to prove a fraudulent scheme or the other elements of the offense. They served only to establish the appellant's bad character.

The introduction of the extraneous offenses was aggravated by the court's charge. Obviously the court intended to give a limiting charge concerning the extraneous offense. The charge given, although not objected to, did not limit the use of such testimony to whatever purpose they were admitted, but authorized the use of the extraneous offense "in determining the guilt of the defendant."

We conclude that under the circumstances of the instant case the court erred in permitting the introduction of the extraneous offenses over objection. In view of our disposition of the appeal, it is unnecessary to address the other grounds of error.

The judgment is reversed and remanded.

TEAGUE, J., not participating.