**Charles Edward GRAYSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45041.**

Court of Criminal Appeals of Texas.

June 21, 1972.

Charles E. Tobin, Dallas, for appellant.

Henry Wade, Dist. Atty. and John B. Tolle, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at 250 years.

Appellant's sole contention on appeal is that the trial court committed reversible error when it allowed testimony concerning an extraneous offense to be introduced into evidence over appellant's objection.

The record reflects that on February 5, 1970, Harold C. McBride, the proprietor of the Payless Liquor Store in Dallas, suffered gunshot wounds during the course of a robbery of his store from which he later died. It is undisputed that, shortly prior to the robbery on that same day, the appellant had entered the liquor store for a brief period of time, purchased a beer and left. Upon leaving the store, the appellant returned to his car which was parked in an alley behind the liquor store. Persons in the car other than appellant were Thelma Jackson, Lenard Grayson (appellant's brother), James Kemp,[1] and Billy Ray Jackson. A few minutes later, appellant, James Kemp, and Billy Ray Jackson left the car and walked to the liquor store leaving Thelma Jackson and Lenard Grayson in the car. Appellant's two companions entered the store while appellant stood on the outside of the building next to the front door.

James Bunch, the proprietor of a neighboring service station, had observed the

---

1. James Kemp was also referred to in this record as James Edward Antwine.

movements of these three individuals and concluded that they were about to stage a robbery of the liquor store. Bunch then told a friend to call the police, grabbed his own gun and quickly proceeded to the front of the liquor store. Appellant had entered the front door by the time Bunch started toward the store. Bunch testified that, as he approached the store, he heard the sounds of groans coming from within the store. Upon reaching the glass front of the store, he stated that he observed one man standing just inside the front door of the store holding a gun, while the other two men stood next to McBride and that one of the men was hitting McBride. Billy Jackson was the first person to exit the store and, as he came out, he and Bunch began shooting at each other. Jackson was wounded and fell to the ground, whereupon, the appellant attempted to exit the store but was fired at by Bunch. The appellant and Bunch then began to fire several shots at each other. Bunch then stated that when he exhausted his ammunition and was forced to retreat to his service station to reload, the appellant had continued to shoot at him as he ran. At this time, the appellant and James Kemp fled the store and the appellant went to his waiting car and drove away.

Robert McKee had also observed the actions of the appellant and his companions prior to their entering the liquor store. McKee testified that when the appellant ran from the store following the shooting spree and drove off in his car, that he had followed him in his own car for a short distance to obtain the license plate number of the car.

Thelma Jackson, one of the two occupants that remained in appellant's car during the robbery, testified that appellant had planned the entire robbery; that he left the car the first time to see if only one man was at the store, and that he had given his gun to Billy Jackson just before they left the car to enter the liquor store. She also stated that appellant directed them to shoot if there was any trouble.

Appellant testified that he had nothing to do with the robbery and that one of the guns (offered into evidence by the State) used in the commission of the offense had been stolen from him. He stated that he had returned to the liquor store because Kemp and Jackson had decided to buy some beer and that he was waiting outside the store when he noticed that Kemp was holding a gun on McBride while Billy Jackson was taking money out of the cash register. Appellant testified that he then entered the store and demanded to know "what the f . . . was going on," to which Kemp told him to "hold it down, man." Appellant said that Billy Jackson then attempted to leave the store but was shot by a man as he came out the door. Appellant stated that this man also fired at him as he tried to leave, whereupon, he went back into the store and took a gun out of James Kemp's hands. When he again tried to exit the store, the man fired at him and the appellant returned his fire; but when this man stopped firing, he ran from the store to his car and drove away.

Following this testimony by the appellant, the State offered the testimony of Ollie Maroney, a cashier at a Crystal Foods Grocery. Mrs. Maroney stated that the appellant had entered the grocery store at two separate times on January 8, 1970. On his second visit, the appellant and two other men proceeded to stage a robbery of the store. The witness positively identified the appellant as one of the robbers.

 In the trial of a person accused of a particular crime, it is a general rule that evidence of previous or subsequent commission of other crimes, not connected with that for which he is on trial, is not admissible. This court has consistently held that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. Jones v. State, Tex.Cr.App., 481 S.W.2d 900 (1972); Powell v. State, Tex.Cr.App., 478 S.W.2d 95; Parks v. State, Tex.Cr.App., 437 S.W.

2d 554; Chandler v. State, Tex.Cr.App., 417 S.W.2d 68; Hafti v. State, Tex.Cr.App., 416 S.W.2d 824. However, this general rule has well recognized exceptions and in certain classes of cases extraneous offenses may be shown as part of the res gestae, or as reflecting upon the mental processes or mental attitude of the accused, where intent, malice or guilty knowledge is an essential element of the crime for which the defendant is on trial, or as throwing light upon the motive inducing the commission of the crime, or to prove identity of the defendant, where identity is an issue, and more especially, where such extraneous offenses have been executed according to a system or method, and it is shown that the accused committed other such offenses and, in so doing, followed the same plan or method as is shown to have been followed in the commission of the crime charged in the indictment. Bryant v. State, Tex.Cr. App., 471 S.W.2d 66; Owens v. State, Tex.Cr.App., 450 S.W.2d 324; 23 Tex.Jur. 2d Evidence, § 195.

■ Evidence of other crimes, however, may be introduced only if such evidence is shown to be both material and relevant to a contested issue in the case. Shaw v. State, Tex.Cr.App., 479 S.W.2d 918 (1972). In O'Brien v. State, Tex.Cr.App., 376 S. W.2d 833, this Court said:

> "Texas follows the general rule and evidence can be offered as direct testimony, and in a case of circumstantial evidence where intent is an issue, *but it more often is permitted to come in in the form of rebuttal evidence after the appellant has testified or offered a defense wherein he has stated that he did not intend to do the act.* Parnell v. State, 166 Tex. Cr.R. 239, 312 S.W.2d 506; Fite v. State, 163 Tex.Cr.R. 279, 290 S.W.2d 897." (emphasis supplied)

■ In the instant case, appellant specifically denied any personal intent to rob the store or kill anybody in the store and further denied knowledge of anybody else's intent to rob the store or kill anybody therein. Thus, appellant's intent became an issue, and proof of the extraneous offense was relevant and material to the question of appellant's intent concerning the offense for which he was tried. O'Brien v. State, supra; Parnell v. State, supra; Vernon v. State, 170 Tex.Cr.R. 150, 338 S.W.2d 728; Cage v. State, 167 Tex.Cr.R. 355, 320 S.W.2d 364. The similarities between the extraneous offense and the instant offense provide common distinguishing characteristics which show that appellant followed the same plan or method in the extraneous offense as is shown to have been followed in the instant case. In both instances, the place to be robbed was first visited by appellant for a short period of time followed by the return of appellant with two other persons to stage the robbery. Thus, the extraneous offense is also admissible to show system and method.

We do not find the separation of less than a month between the extraneous offense and the offense in question to be too remote for purposes of determining intent and system when such evidence is relevant to those issues and logically tends to show appellant's guilt of the crime charged.

■ Appellant complains of the admission of the testimony of an extraneous offense without explanatory instructions having been given by the court limiting the purpose for which such testimony was admitted. The court, in its charge, instructed the jury regarding the limited purpose for which they might consider evidence of an offense other than the offense for which appellant was on trial. No objection was made to the court's instruction, and nothing is preserved for review. See Hawkins v. State, Tex.Cr.App., 424 S.W.2d 907; Lopez v. State, Tex.Cr.App., 468 S.W.2d 365. If it be appellant's contention that the court should have instructed the jury regarding the limited purpose for which the extraneous offense was admitted at the time it was introduced into evidence, no

such request was made and nothing is before us for review.

The judgment is affirmed.

Opinion approved by the Court.