Yale LASKER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 55034–55036.

Court of Criminal Appeals of Texas,
Panel No. 1.

Nov. 22, 1978.

W. John Allison, Jr., on appeal only, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Richard E. Zadina and Richard G. Worthy, Asst. Dist. Attys., Dallas, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for three offenses of theft over $200. Punishment was assessed by the jury at eight years.

Thirty-one witnesses testified. In brief, the testimony shows that appellant was engaged in a scheme whereby the complainants were induced to pay a fee in exchange for his promise to obtain for them small business loans. The record reflects that at the time of the instant offenses lending institutions often required loan applicants to obtain loan insurance from the Small Business Administration for up to ninety percent of the amount borrowed. By requiring such a federal guarantee that at least ninety percent of the loan would be repaid, banks reduced their risk in such transactions to ten percent. Such federally guaranteed notes are more readily saleable among banks and lending institutions. Loan applicants were further required, as a prerequisite of financing, to find another lending institution willing to purchase all or part of the ninety percent guaranteed note from the original lending bank.

Appellant moved from California to Dallas in March of 1975. In Dallas he rented a downtown office as well as an apartment in a downtown building. He placed advertisements in the classified section of both Dallas newspapers which read:

"SBA LOANS money available for any type of business loan. Start-ups and expansion welcome. Capital Acquisition Company 1800 Fidelity Union Tower 748–4635."

To the complainants, who were among eighteen Dallasites taken in by his scheme, the appellant represented that he would prepare a loan application and necessary accompanying documents, present the loan package to an original lending bank, apply to the Small Business Administration for a guarantee of the proposed loan and secure such a guarantee, and seek out and find a second lending institution willing and able to buy the guaranteed note in whole or in part. In exchange for his ostensible services, appellant charged each of the complainants a fee of $1500. Each received from appellant a gold embossed "Certificate of Guarantee" which read:

"This certifies that [name of complainant] (Borrower) is entitled to the following guarantee from the Capital Acquisition Company. The Company guarantees to find a financial institution willing and able to purchase the 90% SBA guaranteed portion of a previously approved Small Business Administration loan to the Borrower, in the approximate principal amount of [amount specified]. This guarantee becomes effective only if a bank agrees to fund the loan and if the loan is approved by the SBA.

"If the Company fails to find a financial institution who will purchase the 90% guaranteed portion of the loan after approval by a bank and the SBA, all money paid to the Company will be refunded in full."

Victor Domino testified that he wanted to borrow $30,000 in order to buy a convenience food store. He went to appellant's office in response to his advertisement and was assured by appellant that there was a ninety-nine percent chance that his loan could be obtained within five to six weeks. Domino was told that the assistance fee would be $1500, with $750 payable immediately and the balance due upon completion of the loan. He wrote appellant a check for $750, signed a contract, and received a Certificate of Guarantee. Domino testified that appellant led him to believe that by virtue of this guarantee all of his money would be refunded in the event a loan could not be negotiated.

Appellant's son prepared a loan package in California and mailed copies to three Dallas banks. There was neither a personal followup nor any other effort made to obtain the complainant's loan. The loan was not obtained and appellant refused to return the complainant's down payment.

The same circumstances were repeated with regard to the other complainants, Rodney Hawkins and Ruth Johnson. Each responded to appellant's ad and each was told that his or her loan could be obtained in a matter of weeks. Both Hawkins and Johnson paid appellant the sum of $1500 in advance and received a Certificate of Guarantee which they were led to believe entitled them to a full refund if a loan could not be arranged. Neither Hawkins or Johnson obtained a loan. When they demanded a refund of their money they were refused. The record reflects that nothing more than a "loan package" was prepared for the complainant in each case and mailed to three banks. At trial, loan officers from various banks testified that their lending institutions would not consider a loan application which is merely mailed in and not followed by a personal meeting.

Lastly, the evidence shows that on July 3, 1975, approximately four months after his arrival in Dallas, appellant departed for California, leaving unpaid bills for apartment and office rent, printing and advertising.

■ Appellant contends that the trial court erred in refusing to submit a requested charge on the lesser included offense of deceptive business practices. See, V.T.C.A., Penal Code, Section 32.42. This contention is without merit. Article 37.09, V.A.C.C.P., provides, in part, that an offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. The offense of deceptive business practices is not a lesser included offense of theft. V.T.C.A., Penal Code, Section 32.42(b), provides that one is guilty of an offense if he commits one or more specified deceptive practices *in the course*

*of business.* This element is not an element of the offense of theft. The elements of deceptive business practices, therefore, are not the same or less than the elements of theft. The appellant's requested charge was properly denied.

 He alleges that the court further erred in failing to charge the jury on the defense of mistake of fact. V.T.C.A., Penal Code, Section 8.02. Appellant maintains, in support of this argument, that all three complaining witnesses were ignorant about the transaction they entered into with appellant, as well as about the intended meaning of the certificate of guarantee. Such ignorance on the part of the complainants is immaterial. Penal Code Section 8.02(a) provides that it is a defense to prosecution that the defendant (not the complainant) has, through mistake, formed a reasonable belief about a matter of fact which belief negates the culpability required. There is no evidence that appellant labored under any mistake of fact. Inasmuch as the issue was not raised by the evidence, the court did not err in failing to so charge the jury.

 Appellant next argues that the court erred in permitting the State to prove that he left Dallas owing office rent, apartment rent, advertising bills and printing bills. Specifically, he contends that such proof showed extraneous offenses which were not relevant to any motive, intent, scheme, identity or design.

Contrary to appellant's contention, his sudden departure from Dallas and failure to pay the operating expenses of his business were highly relevant to the issue of whether he deprived the complainants of money without their effective consent. The absence of such effective consent to a taking is an essential element of the offense of theft as charged in the instant indictment. V.T.C.A., Penal Code, Section 31.03. An owner's effective consent is vitiated if obtained through deception. Deception includes the promise of performance that is likely to affect the judgment of another in a transaction and which the defendant does not intend to perform or knows will not be performed. V.T.C.A., Penal Code, Section 31.01(2)(E). The evidence shows that appellant did not perform the services which he promised to the complainants. The State points out, however, that under Section 31.-01(2)(E) mere non-performance is not in itself sufficient evidence of intent to deceive. Other evidence on the issue of intent or knowledge is required.

The proof that appellant "skipped town" without paying his business bills was admissible to show that appellant either knew or intended that the service which he promised would not be performed. The fact that appellant shut down his place of business, left the jurisdiction without notice and failed to pay the expenses incident to the rendering of his advertised service was indicative of his intent not to perform such services. Appellant, moreover, told each of the complaining witnesses that their loans would be procured within a period of five to eight weeks. When that period of time had lapsed and the complainants began to inquire about their loans, they found that appellant had suddenly moved to California. The timing of appellant's move, along with the trail of unpaid business debts left in his wake, was not consistent with the kind of bona fide move made by one who intends to stay in business and render service to those with whom he is already under contract. Finally, the record reflects that for appellant to adequately perform the services which he guaranteed to his customers he would have had to personally visit banks and lending institutions in the Dallas area. Inasmuch as he did not even remain in Texas, he could not have intended to perform this service.

Appellant's intent was an essential element of the State's case which could not be inferred from the act of non-performance itself. His extraneous offenses were admissible on that issue, as well as to show the factual context in which the offenses occurred. *Mallicote v. State,* 548 S.W.2d 42 (Tex.Cr.App.1977); *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975); *Crawley v. State,* 513 S.W.2d 62 (Tex.Cr.App.1974).

■ Appellant complains of the testimony of L. H. Hudspeth and William Bowling. At trial, Hudspeth, a loan officer at the Dallas branch of the SBA, testified that numerous inquiries and complaints had been received from individuals on whose behalf appellant had promised to file loan applications. No record was found of any of these applications ever having been filed with the SBA in Dallas by Yale Lasker. Bowling testified that he was the Director of Investigators with the SBA in Washington, D.C. He further stated that a nationwide records search was conducted to determine if any SBA office in the United States had ever received a loan application from Capital Acquisition Company. The records showed no such filings; they also showed that only one SBA loan had ever been applied for anywhere in the United States by Yale Lasker and that that loan application had been filed in Los Angeles in July of 1974. Appellant contends that such testimony showed extraneous offenses and was erroneously admitted.

The testimony of which appellant complains showed that appellant had engaged in transactions of the kind for which he was prosecuted in the instant case. Such evidence was admissible not only on the issue of intent but to show the organized scheme which he utilized in perpetrating these offenses. *Mallicote v. State*, supra; *Cameron v. State*, supra; *Johnson v. State*, 494 S.W.2d 870 (Tex.Cr.App.1973). No error is shown.

■ He next asserts that the trial court improperly excluded from evidence want ad clippings from California newspapers which advertised the same type of loan assistance service as that ostensibly offered by appellant. It is contended that such evidence was relevant to show the legitimacy of the type of business engaged in by appellant. We agree with the State that the appearance of advertisements by third parties in a Los Angeles paper has no bearing whatever on the legitimacy of the service which was advertised by appellant. The evidence was properly excluded.

■ After sustaining the State's objection to the admission of such evidence, the court instructed defense counsel to make the testimony elicited from the witness David Lasker relevant to the instant case. Defense counsel objected to the court's statement as a comment on the weight of the evidence and the court sustained the objection. Appellant here complains that the court's remark caused irreversible prejudice and therefore constituted fundamental error. We do not agree. Appellant's objection was sustained. No instruction to disregard was requested nor was a motion for mistrial made. Appellant received all the relief which he asked for at trial. *Cazares v. State*, 488 S.W.2d 110 (Tex.Cr.App. 1972); *Smith v. State*, 486 S.W.2d 374 (Tex. Cr.App.1972). Nothing is preserved for review.

■ Finally, Lasker attacks the sufficiency of the evidence. Appellant did not testify at the guilt-innocence stage. He did, however, testify at the punishment stage where, in response to questions posed by defense counsel, he admitted all the elements of the offense of theft. Under such facts he may not, on appeal, challenge the sufficiency of the evidence. *Richardson v. State*, 458 S.W.2d 665 (Tex.Cr.App.1976). See also, *Bodde v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978).

No reversible error having been shown, the judgments are affirmed.