**Jeffrey D. PLANTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–82–01436–CR to 05–82–01438–CR.**

Court of Appeals of Texas,
Dallas.

May 10, 1984.
Rehearing Denied June 8, 1984.

Frank Jackson, Bruce Anton, Dallas, for appellant.

Henry Wade, Dist. Atty., Kathi A. Drew, Asst. Dist. Atty., Dallas, for appellee.

Before STEPHENS, WHITHAM and STEWART, JJ.

STEPHENS, Justice.

Jeffrey D. Plante, appellant, was charged by indictment with theft of property of the value of $10,000 or more. He was found guilty and sentenced by a jury to ten years' confinement in the Texas Department of Corrections. On the same day, after the jury assessed punishment, the trial judge heard the State's motion to proceed to adjudication of guilt in two prior theft cases in which appellant had been given deferred adjudication. At the hearing, the court took judicial notice of the jury's verdict, revoked appellant's previous award of probation and proceeded to an

adjudication of guilt in the two prior theft cases. The court found appellant guilty in the two prior theft cases and sentenced appellant in all three cases. Appellant appeals all three cases, presenting forty grounds of error in the principal case of theft of property over $10,000, and three grounds of error in each of the deferred adjudication cases.

We agree with appellant's contentions that the trial court committed reversible error by improperly admitting evidence of numerous extraneous debts, unrelated and dissimilar to the one for which he was being tried, and accordingly, we reverse the judgment of the trial court in the principal case, and remand the cause for a new trial. We affirm the judgment of the trial court in each of the deferred adjudication cases.

### Principal Case

The theft charge brought against appellant, president of Trinicon, Inc., in the principal case, arose from his credit purchases of tile from a wholesale tile supply company for Trinicon. Appellant represented to the supplier that the tile was to be used on a construction job in Sherman, Texas. Of the forty grounds of error presented, thirty-five complain of the admission of evidence of extraneous debts; one complains of the denial of an evidentiary hearing on the admissibility of extraneous offenses; one complains of the admission of an extraneous offense, the conversion of a jeep; one complains of the admission of certain exhibits as business records; one complains that the evidence is insufficient to prove theft by deception; and finally, one complains that the court erred by admitting the testimony of a certain reputation witness.

During presentation of the State's case-in-chief, evidence was offered that on or about April 5, 1982, appellant made arrangements by telephone with Dal-Tile Corporation, a manufacturer of ceramic tile products, to purchase a large quantity of Mexican adobe tile. During the telephone conversation, appellant represented to Mr. Brittingham, the general sales manager of Dal-Tile, that he was the president of a corporation named Trinicon, Inc.; that Trinicon had a credit application on file with Dal-Tile; that he needed immediate delivery of six thousand square feet of Mexican adobe tile; that the total order, when completed, would amount to about thirty thousand square feet of tile; and that the tile was to be used on a construction project in Sherman, Texas, known as Castillian Plaza. Brittingham explained to appellant that their credit terms required payment within 30 days of the invoice date. During the telephone conversation the price of the tile was agreed upon, and Brittingham agreed to deliver it to a mini warehouse in North Dallas. Deliveries of tile were made between April 5, 1982, and June 29, 1982, aggregating a total charge in excess of $10,000.00. No payments were made on any of the invoices sent to Trinicon.

Attempts to collect for the tile were unsuccessful. On one occasion, appellant told Dal-Tile that he would send his accountant, Kathy Garcia, to Dal-Tile with the money. It was shown that Kathy Garcia had not worked for appellant for approximately one and one-half years when appellant made this representation. Brittingham asked appellant for Castillian Plaza's address, but he refused to give it. Brittingham testified that he and another Dal-Tile employee searched the building permit records of Sherman, Texas, and all surrounding communities, and were unable to locate a shopping area known as Castillian Plaza. Early in July, Brittingham became suspicious of appellant's actions, and because of a conversation with a third person, he purchased a newspaper, read the want ads, and found an ad offering Mexican adobe tile for sale that listed a telephone number which he recognized as appellant's. Brittingham had an employee of Dal-Tile call the number and inquire about the tile, while he listened in on the call. Brittingham recognized appellant's voice and heard appellant offer Mexican adobe tile for sale at a price lower than the price appellant had agreed to pay Dal-Tile.

The State offered thirty-five witnesses who testified over appellant's objection that appellant or his corporation owed various debts. The State argues that this evidence was admissible as additional evidence of appellant's guilt because it showed appellant's scheme and criminal intent. Some of these debts were admissible to show appellant's scheme and criminal intent, yet many were not.

It is axiomatic that an accused must be tried for the crime with which he stands charged, and that evidence of other unrelated crimes is inadmissible. "This court has consistently held that an accused is entitled to be tried on the accusation made in the state's pleading and that he should not be tried for being a criminal generally." *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972). *See Nance v. State,* 647 S.W.2d 660 (Tex.Crim.App.1983); *Hines v. State,* 571 S.W.2d 322 (Tex.Crim. App.1978); *Ford v. State,* 484 S.W.2d 727 (Tex.Crim.App.1972). This rule exists because evidence of extraneous offenses is inherently prejudicial to the accused because it confuses the jury, and because its admission forces the accused to defend himself against charges of which he has not been notified. *McCann v. State,* 606 S.W.2d 897 (Tex.Crim.App.1980); *Murphy v. State,* 587 S.W.2d 718 (Tex.Crim.App. 1979); *Cameron v. State,* 530 S.W.2d 841 (Tex.Crim.App.1975); *Albrecht,* 486 S.W.2d at 100. The Court of Criminal Appeals has stated in *Albrecht* and later in *Ruiz v. State,* 579 S.W.2d 206 (Tex.Crim.App.1979), that the threshold inquiry in determining the admissibility of any evidence is whether the probative value of the evidence outweighs its inflammatory aspects, if any.

To be admissible, evidence of the extraneous offense or transaction must be both relevant and material to a contested issue in the case. *Nance,* 647 S.W.2d at 662; *McCann,* 606 S.W.2d at 901; *Murphy,* 587 S.W.2d at 722; *Albrecht,* 486 S.W.2d at 100. In *Albrecht,* the Court of Criminal Appeals used the holding of *Jones v. State,* 481 S.W.2d 900 (Tex.Crim.App.1972), to illustrate its point. In *Jones,* the Court of

Criminal Appeals held that where there was uncontroverted direct evidence of identity, and where guilty intent could be inferred from the act itself, evidence of extraneous offenses was inadmissible to prove these elements. *Albrecht,* 486 S.W.2d at 101; *See Nance,* 647 S.W.2d at 662. If the State can convict without the collateral evidence, the evidence is inadmissible. Furthermore, the extraneous offense cannot be offered into evidence until there is a "clear showing" that the accused participated in the extraneous offense. *McCann,* 606 S.W.2d at 899.

There are, however, exceptions to this general rule. If the State can prove that there are sufficient common distinguishing characteristics between the extraneous offense and the primary offense such that the probative value of the evidence outweighs its prejudicial value, then the court may admit the evidence to prove certain elements of the crime. *See Hines,* 571 S.W.2d at 325. Evidence of other crimes or transactions closely related in time, place, or the common mode of commission of the offenses may be admitted to show: (1) identity, *Collins v. State,* 577 S.W.2d 236 (Tex.Crim.App.1979); *Buckner v. State,* 571 S.W.2d 519 (Tex.Crim.App. 1978) (on rehearing); *Ransom v. State,* 503 S.W.2d 810 (Tex.Crim.App.1974); (2) guilty knowledge, *see Lasker v. State,* 573 S.W.2d 539 (Tex.Crim.App.1978); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim.App.1972); (3) intent, *Sewell v. State,* 629 S.W.2d 42 (Tex.Crim.App.1982); *see Christiansen v. State,* 575 S.W.2d 42 (Tex.Crim.App.1979); *Lasker v. State,* 573 S.W.2d 539 (Tex.Crim. App.1978); *Crawley v. State,* 513 S.W.2d 62 (Tex.Crim.App.1974); *Hammonds v. State,* 500 S.W.2d 831 (Tex.Crim.App.1973); *Grayson v. State,* 481 S.W.2d 859 (Tex. Crim.App.1972); *Hampton v. State,* 402 S.W.2d 748 (Tex.Crim.App.1966); *Stewart v. State,* 398 S.W.2d 136 (Tex.Crim.App. 1966); *O'Brien v. State,* 376 S.W.2d 833 (Tex.Crim.App.1964); or (4) a common scheme, plan, design, or system of criminal activity of which the crime charged is a part, *see Rogers v. State,* 598 S.W.2d 258

(Tex.Crim.App.1980); *Lasker v. State,* 573 S.W.2d 539 (Tex.Crim.App.1978); *Hammonds v. State,* 500 S.W.2d 831 (Tex.Crim.App.1973); *Grayson v. State,* 481 S.W.2d 859 (Tex.Crim.App.1972).

These exceptions are very narrow. Evidence of extraneous offenses or transactions can only be admitted on the issue of identity where there are distinguishing characteristics common to both offenses such that the accused's acts are earmarked as his handiwork, or figuratively, marked with his "signature." *Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App.1981). Such evidence can only be admitted on the issue of intent or guilty knowledge where intent cannot be inferred from the act itself. *Albrecht,* 486 S.W.2d at 100. *Hines,* 571 S.W.2d at 325. Such evidence can be admitted to show a common plan or scheme only if the offenses have common distinguishing characteristics which show that there was a common plan or scheme in both offenses. *Grayson,* 481 S.W.2d at 862; *see Rogers,* 598 S.W.2d at 261; *Lasker,* 573 S.W.2d at 543.

*Crawley v. State,* 513 S.W.2d 62 (Tex.Crim.App.1974), exemplifies the situation where such evidence is admissible. Appellant Crawley was convicted of willful injury to an automobile. At trial, the State presented evidence of six other collisions involving Crawley that occurred at the same place, in the same manner and within five months of each other. The evidence was correctly admitted to prove intent.

Appellant's propensity to default in the payment of debts is not at issue. The issue here is whether appellant, by his deception, induced Dal-Tile to sell him the tile on credit, knowing at the time that he did not intend to pay for the tile.

Appellant's plea of not guilty placed the questions of his identity, intent, and guilty knowledge in issue. The general rule in Texas is that where the question of intent is in issue, circumstantial evidence can be offered as direct evidence during the State's presentation of its case-in-chief, although it is more often admitted as rebuttal evidence after appellant has testified that he did not intend to do the act. *Grayson,* 481 S.W.2d at 862; *O'Brien,* 376 S.W.2d at 836. Appellant's intent cannot be inferred from the act alone, thus the State properly offered other transactions in its case-in-chief as circumstantial evidence of appellant's intent. For the evidence of these other transactions to have been admissible, they must have occurred within a reasonable time frame to the time of the offense for which he stood charged, and they must have shown a similarity of plan, scheme or design consistent with the acts of appellant in the crime charged, or a combination of these similar distinguishing characteristics.

The language of the indictment charges that appellant

> did unlawfully ... knowingly and intentionally exercise control over property ... with the intent to withhold said property permanently from and therefore deprive the owner, JACK BRITTINGHAM, of said property ... and the said Defendant exercised control over said property without the effective consent of the said owner in that the said owner was induced by deception, to-wit: the said Defendant promised performance that was likely to affect, and did affect, the judgment of the said JACK BRITTINGHAM in the transaction, to-wit: the said Defendant promised to pay the said owner for said property when payment became due, and the said Defendant did not intend to perform said promise and knew said promise would not be performed....

This language charges appellant with a violation of TEX.PENAL CODE ANN. § 31.-01(2)(E) (Vernon 1974) which reads:

> "Deception" means: ... promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or

knew the promise would not be performed.

Proof was offered that in a telephone conversation, Brittingham, the complaining witness, extended credit to appellant, relying upon his statement that the corporation Trinicon, of which appellant was president, had a credit application on file with the complainant. During this telephone conversation, complainant fully explained the terms of payment for credit charges. Additionally, a price for the tile was quoted and an agreement on the price was reached. The tile was delivered and accepted. We conclude that this evidence establishes appellant's implied promise to pay in accordance with the complaining witness' credit policy.

In the telephone conversation, appellant gave as a reason for the purchase of the tile, a contract or "job" that Trinicon had in a shopping center known as Castillian Plaza. At trial, Castillian Plaza was circumstantially proven to be non-existent. Furthermore, a witness who was employed by appellant during the time in question, was shown to have knowledge of the tile, as well as the carpet in the warehouse, and he testified that at the time of delivery of the tile and carpet, Trinicon had no outstanding jobs on which the products were to be used.

Some of the extraneous transactions, sufficiently similar in character to be admissible for the purpose of showing a similar plan or scheme, as well as appellant's criminal intent, were:

### Admissible Extraneous Transactions

Billing records of both the Dallas Morning News and the Dallas Times Herald show that advertisements were placed in their want-ad sections by Trinicon. As early as May 6, 1982, the services of the Dallas Morning News were utilized. Mexican adobe tile was offered in some of the ads, and carpet was offered in others. Some of the ads were authorized by a person named Dan Leigh, but most were authorized by appellant. The telephone number given was that of appellant. As early as June 11, 1982, ads were placed in the Dallas Times Herald offering Mexican adobe tile for sale, using the same telephone number. At the time of trial no payment had been made on either account.

An application for credit was filed with Tool World Inc. by Trinicon, showing appellant to be the principal. Tool World was in the business of selling hand and power tools. Three separate sales were made, aggregating approximately $2,000.00, on which no payments had been made. On each occasion the tools were delivered to appellant's address. One of the tools purchased was a three horsepower air compressor at a cost of $505.00. Appellant's son testified that this compressor, never having been uncrated, was sold to a neighbor for $250.00. These sales were made in early April 1982. On one occasion, when attempts were being made to collect, Tool World was told that Kathy Garcia issued the checks from the downtown office. On one occasion, when an outstanding invoice was due and unpaid, in order to induce Tool World to deliver the new order, Tool World was told that a check had been placed in the mail.

American Carpet Mills, a subsidiary of Keller Industries of Georgia, was shown to have made credit sales to Trinicon, pursuant to directions of appellant, of carpet and other floor covering, aggregating the sum of $6,294.96, none of which had been paid. Delivery of the carpet was made to the same warehouse as was the Mexican adobe tile.

American Tile Co., a Dallas concern, was shown to have made two credit sales of Spanish adobe tile to Trinicon, on application of appellant, in the aggregate amount of $4,740.73, on which no payment had been made. Delivery of this tile was to a different warehouse. These sales were in July 1982.

Monroe Schneider and Associates, carpet contractors, were shown to have made ten credit sales of carpet to Trinicon, on the application of appellant, for the aggregate sum of approximately $23,000.00, on which

no payment had been made. Sales were made commencing in April 1982.

In each of the above transactions, not only was no payment made on the sales, none of the merchandise was returned.

 We conclude that this evidence together with appellant's conduct, subsequent to the purchase of the tile, of offering it for sale from the warehouse where it was initially delivered, for a price less than that he had contracted to pay, together with evidence of repeated untruths given the various concerns in response to their collection efforts, are circumstances from which a jury might infer beyond a reasonable doubt that appellant had no intention of performing his initial promise to pay Dal-Tile for the tile, at the time of purchase. We hold the admissible evidence sufficient to support the conviction.

Other transactions, which were inadmissible, were:

### Inadmissible Extraneous Transactions

 Several transactions occurred more than a year prior to April 1982, yet none of them were shown to have followed the identical pattern, or even a close similarity to the deceptive plan used in procuring credit from Dal-Tile. For example: Gary Groce, a former partner of appellant, testified that he had loaned money on various occasions to appellant. On one occasion, appellant secured the loan with a gold watch, which was later given back to appellant, before the loan was paid. On another occasion, Groce had purchased a jeep under a monthly payment plan, which he later leased to Trinicon, Inc. Appellant had driven the jeep and used it as his own. Under the agreement with Groce, Trinicon was to make Groce's payment on the jeep. Some payments were made by appellant, or the corporation, and then payments were discontinued. After appellant refused to return the jeep to Groce, Groce had the jeep repossessed. William Vastine testified that, some eighteen months or two years prior to trial, he had hired appellant as an estimator; subsequently, he and appellant had formed a corporation to do construction work. Appellant had been the president of the corporation. After the corporation was formed, Vastine quickly became conscious of problems between the corporation and subcontractors, who, according to Vastine, "weren't getting paid properly." Vastine testified that he had seen appellant refuse to pay sub-contractors even when he was specifically instructed to pay them. Steve Brownfield testified that on nine occasions his company had provided limousine service to appellant, which remained unpaid. The president of another corporation testified that his company had installed a satellite antenna and other equipment at appellant's home, and appellant had never paid for it. The owner of a landscape maintenance company testified that appellant had contracted with him to clean up and maintain his yard, and had not paid him. A carpet cleaner had cleaned the carpets at appellant's home, and had not been paid. The owner of another limosine service testified that he had been "referred" to appellant by another limousine service owner, and that in response to such referral, he went to appellant's home, picked up three children, transported them to Greenville, Texas, and returned; and that appellant had never paid for those services. The owner of "Puppy Love, Inc.," a mobile dog grooming service, testified that he had groomed appellant's dog in his home on seven different occasions and had not been paid. The owner of a ski shop testified that appellant rented skis and purchased equipment from him for a family trip to Steamboat Springs, Colorado, for which he only paid a down payment. An employment agency owner, who had known appellant since 1967, testified that he located a secretary for appellant, for which he had never been paid. These recited examples of the evidence fall far short of satisfying the test that to be admissible, extraneous transactions must be within a reasonable time frame to the time of the commission of the crime charged; and that they must follow a design, plan, or pattern consistent with the design, plan, or pattern used in the commission of the offense with

which appellant is charged. We hold that the evidence, as developed on many of the debts offered, was insufficient to qualify such debt for admission. The admission of these extraneous transactions was highly prejudicial, and we cannot hold that their admission was harmless error.

 In consideration of appellant's contention concerning the denial of his request for a hearing outside the presence of the jury, in which he might have interrogated each of the numerous witnesses to test the admissibility of their testimony, we note that the case on which appellant relies is *United States v. Broadway*, 477 F.2d 991 (5th Cir.1973). Although *United States v. Broadway* is suspect as any authority, because it was expressly overruled by *United States v. Beechum*, 582 F.2d 898 (1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), it did not mandate that appellant be given the right·to interrogate each witness outside the presence of the jury; the court only held that a hearing should be conducted, so that the court in its discretion might determine the admissibility of the evidence. In this case, the prosecutor generally apprised the court of the nature of the extraneous transaction testimony that he would offer, including the names of several witnesses and summaries of their testimony. Although such a limited hearing is not prohibited, it must be sufficient to establish the admissibility of the evidence sought to be offered. We hold that no reversible error is shown.

 Appellant further maintains that the trial court committed reversible error by admitting certain exhibits as business records over his objection. The sponsoring witness, an employee of a restaurant supply company, identified the records as his copies of official company business records made in the regular course of business, at or near the time of the event, by an employee who either had personal knowledge of the transaction or acted under his instructions through their computer system. These exhibits were properly admitted as business records. TEX.REV. STAT.ANN. art. 3737e (Vernon Supp.1984).

Article 3737e applies to criminal cases, and it is to be liberally construed. *Williams v. State*, 549 S.W.2d 183, 187 (Tex.Crim.App. 1977). Appellant's argument that the witness was not a proper custodian of the records is not well taken. The witness testified that he kept these records under his "care, custody, control."

 Finally, appellant argues that the trial court committed reversible error by allowing an employee of the District Attorney's bad check department to testify that appellant's reputation in Dallas County as a peaceful, law abiding citizen was bad. Appellant argues, in essence, that the employee is an improper reputation witness because her only knowledge about appellant came from taking hot check complaints. We disagree. A witness is entitled to determine a defendant's reputation from discussions with others concerning defendant's specific acts of misconduct. *Stephens v. State*, 522 S.W.2d 924 (Tex. Crim.App.1975). This witness testified outside the presence of the jury that she had heard numerous persons refer to appellant as a "crook or criminal."

### Deferred Adjudication Cases

In two prior theft cases, appellant had been charged with theft of services in one case and theft of property in the other, valued at over $200 but less than $10,000. He had pled guilty and had received deferred adjudication and probation for two years. After indictment in the present case, the State filed a motion to proceed with an adjudication of guilt in the two prior cases. The court held a hearing on this motion, after the jury verdict in the principal case, and proceeded to an adjudication of guilt in the prior cases. The court found Plante guilty of the earlier offenses and sentenced him to ten years' confinement in the principal case and one of the deferred adjudication cases, the sentences to run concurrently, and ten years' confinement for the second deferred adjudication case, to commence when the previous convictions have been served.

Appellant urges three grounds of error in both of the deferred adjudication cases. He contends that: (1) the evidence of theft by deception in the principal case is insufficient to establish that Plante violated the terms of his probation; (2) there is no evidence that appellant was sentenced in open court to consecutive sentences; and (3) the court's cumulation order is insufficient because it orders a prior sentence to extend past a subsequent sentence.

■ We have no authority to consider appellant's first ground of error. TEX. CRIM.PROC.ANN. art. 42.12 B § 3d(b) (Vernon 1979) provides that in a deferred adjudication proceeding, no appeal may be taken from a trial court's determination to proceed to an adjudication of guilt on the original offense. Our courts have strictly upheld this statute. *Williams v. State,* 592 S.W.2d 931 (Tex.Crim.App.1979); *Wright v. State,* 592 S.W.2d 604 (Tex.Crim.App.1980). Consequently, we have no authority to consider in this appeal whether there was sufficient evidence before the trial court for it to establish that Plante violated the terms of his probation. That determination by the trial court was an integral part of its decision to proceed with an adjudication of guilt.

■ Appellant's arguments concerning the invalidity of the judgments and sentences in the deferred adjudication cases are without merit. The record reflects that the trial court sentenced Plante in open court in all three cases. The trial court first sentenced Plante to ten years' confinement in the principal case and one of the deferred adjudication cases, and then sentenced Plante to ten years' confinement for the second deferred adjudication case, that sentence to commence when the previous convictions had been served. Accordingly, we affirm the judgments of the trial court in the deferred adjudication cases.

The judgment of the trial court in case No. 05–82–01436, theft of property of the value of $10,000 or more, is reversed, and that cause is remanded for a new trial.

The judgments of the trial court in causes No. 05–82–01437 and No. 05–82–01438 are affirmed.