

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00095-CR

WILLIE MEDFORD, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 28497

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

When Willie Medford, Jr., was searched by a police officer, the officer found cocaine in a pocket of the jacket worn by Medford. As a result, Medford was convicted by a jury of possessing less than one gram of cocaine and sentenced to twenty months' confinement in a state jail facility.

In Medford's appeal, he argues that because he testified that the jacket was not his but borrowed and that the cocaine in its pocket (the existence of which he says he was unaware) did not belong to him, the evidence was legally insufficient to support his conviction. He also complains that the trial court erred in overruling his objections to (1) a question propounded by the State that Medford alleges was designed to elicit hearsay testimony, (2) an officer's testimony that Medford was "responsible" for drugs that were found in the jacket pocket (a statement Medford characterizes as an opinion of law), and (3) portions of the State's jury argument.

We find that the evidence was legally sufficient to support Medford's conviction, the trial court properly characterized the State's comment during closing as permissible fodder for jury argument, and it correctly ruled that the officer's testimony was admissible. We also conclude that Medford failed to preserve error with respect to the State's question about which he complains as being allegedly designed to elicit hearsay testimony since Medford suffered no adverse ruling regarding his objection to that question. Accordingly, we affirm the trial court's judgment.

**I. Legally Sufficient Evidence Supported Medford's Conviction**

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of possession of cocaine in an amount less than one gram beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Looking at the elements of the offense with which he was charged, it was the duty of the State to prove that Medford (1) intentionally or knowingly (2) possessed (3) cocaine (4) in an

3

amount less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115 (West 2010). "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Here, Medford challenges the sufficiency of the proof of the first element (i.e., the mens re).

Officer Justin Meeks encountered Medford smoking a cigar in a "high crime" area at 11:15 p.m. on a cold February evening. Meeks stopped him for "walking on the wrong side of the roadway." Meeks testified that upon being stopped, Medford immediately admitted that "he had a straight" (a slang term for "a device for smoking crack cocaine"). The video recording of the arrest, which was not accompanied by an audio recording, depicts Medford gesturing to his back pants pocket a few moments after the stop. The video recording shows that Meeks looked into the pocket and retrieved an item that is not clearly depicted on the recording. Meeks testified that the item retrieved from the pants pocket was a metal pipe with "burn marks on both ends of it," indicating its use. Immediately after retrieving this item, Meeks paused the search to put on a pair of gloves and handcuff Medford. Meeks testified at trial that he donned the gloves after finding the drug paraphernalia because "I'm not sure what else may be present. Just protection for myself." Meeks then proceeded to search the jacket pockets. The State pointed out that the jacket fit Medford's unusually tall, six-foot, five-inch frame well.

Officer Jack Malloy arrived to assist Meeks. Meeks searched the jacket and located two small, clear baggies and an empty cigar pack containing a solid white substance believed to be

4

cocaine. Meeks testified that Medford registered no apparent surprise when the cocaine was retrieved from the jacket and that he did not recall Medford then asserting any claim that the jacket was borrowed. Medford was arrested. Brooke Harrison, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, testified that the substance found in the jacket pocket was cocaine and that it weighed .41 grams.

At trial, Medford testified that the drugs did not belong to him, offering an exculpatory explanation regarding his possession of the jacket in which the contraband was found. Medford claimed that he was a self-employed "street mechanic." He told the jury that he was walking home after working on a car for "[s]ome girl named Tanya" at about 8:30 or 9:30 at night when he received a call from a man out of Dallas who asked if he could unlock his steering wheel. Medford said that he agreed to help after the man said there was a woman with children in the broken down car and that "they were trying to get back to Dallas where the other kids w[ere]." According to Medford, the man, who was riding with someone else, picked him up in a car and took him to the vehicle needing repair. Medford told the men, "I need to go home and get me a coat, because I'm cold," and the man responded by lending him the jacket in question.

Medford said he had a few tools and a flashlight on his person which he had used in repairing Tanya's vehicle. Medford testified that the man "got in a car with another girl and throwed (sic) his jacket up on top of the car and said, watch this till I get back." The woman and children "got out and went in – went in somebody's house" while the car was being repaired.[1] Medford testified that he worked on the car unsuccessfully until 11:00 p.m. and then decided to

---

[1]Medford said, "[I] don't know where she went."

enlist his nephew's help to see if he could locate a truck to tow the vehicle to Dallas. Medford put on the man's jacket and was walking to his nephew's house when he was apprehended by Meeks. Medford claimed that when he was stopped by Meeks, he informed Meeks that the coat did not belong to him. He further denied that the metal pipe, which Meeks claimed to find in the pocket of Medford's pants, was his and stated, "It could have been in the coat, because I did not have one." Medford claimed that the item retrieved from his pocket was a pocket knife, not a metal pipe.

Medford argues on appeal that "there was nothing other than [his] presence to connect him to the contents of the coat." He asks that we apply the "links test" employed when the accused is "'not in exclusive possession of the place where the substance is found.'" *See id.* at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). In such a circumstance, "'it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'" *Id.* (quoting *Deshong*, 625 S.W.2d at 329); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd).

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish possession of contraband include: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) incriminating statements made by the accused when arrested, (7) an attempt to flee, (8) furtive gestures, (9) an odor of contraband,

(10) the presence of other contraband or drug paraphernalia, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct indicating a consciousness of guilt, (15) the accused's incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) the accused's presence in a suspicious area under suspicious circumstances. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830. The number of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

Here, the video recording of the arrest demonstrated that Medford was walking alone in the well-fitting jacket when he was stopped by Meeks. No contraband was in plain view, but Medford had easy access to the cocaine in the enclosed jacket pockets being carried on his person. He had been smoking a cigar at the time of the arrest, and a cigar box containing cocaine was found inside the pocket of the jacket. Although there was no evidence suggesting Medford was currently under the influence of cocaine, Meeks testified that Medford made an incriminating statement when he admitted to the ownership of a metal smoking pipe. At the time of the arrest, there was conflicting evidence as to whether Medford owned the jacket, although Medford admitted that the man he was trying to assist granted him possession of the jacket while

the car was being repaired. Meeks testified that Medford did not appear surprised when the cocaine was recovered from the jacket. He also testified that the arrest occurred in a "high crime" area at night. At least eight of the "links test" factors were met in this case (factors 1, 3, 5–6, 10–12, and 17).

Moreover, Medford's explanation required the jury to believe that he was wearing no jacket or other warm clothing on a cold February night,[2] that he was repairing vehicles and carrying tools to and from jobs on foot, that he left the tools he used to repair Tanya's vehicle with the unknown man's vehicle while walking to his nephew's home, that the man from Dallas who was desperate to get home that night left Medford alone with his vehicle, that Medford assumed the man would be willing to pay to tow the vehicle, that the unnamed man's jacket fit six-foot, five-inch Medford well, that Medford's cigar did not come from the cigar pack which contained cocaine, and that Meeks was not telling the truth when he testified that a metal smoking pipe was recovered from Medford's pants pocket.

Medford's denial of the ownership of the jacket in light of Meeks' testimony required a resolution of conflicting evidence, as well as an evaluation of witness credibility and the weight to be given testimony. These are functions left to the jury's sole discretion. *See Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). While the record may demonstrate that Medford denied the jacket was his, the logical force of the evidence supports an inference of conscious possession of the cocaine on the part of Medford. There is ample evidence to support

---

[2]The video recording depicts snow falling during the arrest.

the jury's resolution of the conflict between Meeks' testimony and Medford's controverting denial.

We find the evidence legally sufficient to sustain Medford's conviction. His first point of error is overruled.

## II.      Medford Failed to Preserve His Hearsay Complaint

Narcotics investigator Wesley Russell was asked by the State if either Meeks or the officer with him at the time of the arrest "indicate[d] to you, in any way, that the defendant claims at the time of his arrest that the drugs do not belong to him?" This question drew an objection from Medford's counsel that it "calls for hearsay and reviewing a written report – that would be double hearsay." The trial court sustained that objection, and Russell never responded to the question.

On appeal, Medford argues that the elicited testimony would have been "no more than hearsay based upon hearsay." We point out that the responsive testimony sought by the question was never uttered because the trial court cut off the line of questioning upon Medford's objection to it. Medford never suggested that the act of posing the question itself was in error; he received all of the relief for which he asked. "It is well settled that when an appellant has been given all the relief he or she requested at trial, there is nothing to complain of on appeal." *Kay v. State*, 340 S.W.3d 470, 473 (Tex. App.—Texarkana 2011, no pet.) (citing *Nethery v. State*, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985); *Lasker v. State*, 573 S.W.2d 539, 543 (Tex. Crim. App. [Panel Op.] 1978)). "Failure to request additional relief after an objection is sustained preserves nothing

9

for review." *Id.* (citing *Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Medford failed to secure an adverse ruling. Thus, we overrule his second point of error because it presents nothing for our review. In any event, Russell testified without objection that there was no indication in the investigation that the drugs belonged to someone other than Medford.

**III.    No Error in Admitting Testimony Regarding Medford's Possession of the Jacket**

Next, Medford argues that based on the following transcript during Russell's direct examination, the trial court erred in allowing Russell to give a legal opinion:[3]

> Q.    [By the State] And if there had been some indication that the defendant had claimed that the article of clothing that the drugs were found in belong to someone else, would you, as the investigator, have felt it was necessary to go try to track down what – whomever that might belong to?
>
> A.    [By Russell] The clothing that he was wearing?
>
> Q.    Right.
>
> A.    No, ma'am.
>
> Q.    And why not?
>
> A.    Well, that's – the clothing that he's wearing, he's in possession of the clothing – has the clothing on him. That's not something that we would do, is try to track down somebody who might have belonged to that piece of clothing. The defendant was wearing the clothing. He's responsible for –

---

[3]In this seemingly multifarious point of error, Medford complains that this testimony constituted an "inadmissible character attack," an inadmissible "opinion of criminal responsibility," and a violation of his right to remain silent. *See Dickey v. State*, 189 S.W.3d 339, 341 (Tex. App.—Texarkana 2006, no pet.) (we may overrule multifarious points of error). Our review of the record indicates that none of these arguments were made to the trial court. Because they were not preserved, we will not address them. *See* Tex. R. App. P. 33.1.

[By Medford's Attorney]:  Objection, Your Honor.  Objection to the part where he says that he's legal – he's in possession.  Now he's giving a legal opinion.

THE COURT:  Well, he can give his opinion as a police officer.

Q.     Go ahead.  You were saying.

A.     The things that he has in his pocket and the clothing that he has on is what he is in control of.

Q.     And is it uncommon for a defendant who is caught with drugs to say that the pants he's wearing or the jacket he's wearing doesn't belong to him?

A.     No, ma'am.

The trial court's decision to admit evidence will not be overturned on appeal absent a showing that the court abused its discretion.  *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  A trial court does not abuse its discretion so long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  So long as its decision falls within that zone, we may not substitute our own decision for that of the trial court.  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

The court's comment indicates its position that Russell was not advancing a legal opinion but, rather, a statement of fact.  It was uncontested that Medford was in possession and control of the jacket; the sole question raised was whether Medford was in intentional or knowing possession of the drugs.  This was a question not addressed by Russell's responses as quoted above.  "Possession," as used in this exchange, is not a legal term of art but is, rather, a word

11

having a common meaning which is ordinarily understood. Thus, we find no abuse of discretion in the court's determination that a legal opinion was not being given by Russell. Moreover, Russell could provide his lay "opinions, beliefs, or inferences as long as they [were] drawn from his . . . own experience or observations." *Osbourn v. State*, 92 S.W.3d 531, 535, 537 (Tex. Crim. App. 2002).

We conclude that the court's overruling of Medford's objection was within the zone of reasonable disagreement. We overrule Medford's third point of error.

## IV. Trial Court Properly Overruled Medford's Objection to the State's Jury Argument

Medford testified that Meeks was lying to the jury when he told them the metal pipe was found in the pocket of Medford's pants and when Meeks denied that Medford disclaimed ownership of the jacket during the arrest. Medford testified that he did not know why Meeks "would do that to me. I guess he don't [sic] like me for some reason." Medford told the jury that he had been framed.

The following occurred during the State's response to this argument in closing:

> THE STATE: Thank you, Your Honor. The defendant – let's make no mistake about it. The defendant was very clear. His position is, Officer Meeks is a liar. That he was framed. The defense attorney has – takes a little bit different position, because he knows how unreasonable that sounds.

> MR. MULLINS: Objection, Your Honor, as what my intentions are and what I think, because I don't think it's unreasonable.

> THE COURT: Well, overruled. This is argument, none of which you hear from the attorneys in closing argument is evidence. It's their spin on the evidence.

12

Medford argues that the State "told the jury that defense counsel knew that the Appellant's version of the facts was unreasonable" and that this statement was "certainly not evidence before the jury."

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.— San Antonio 2009, pet. ref'd). Proper jury argument includes answering jury argument made by opposing counsel during the argument itself. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (citing *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)).

During closing argument, Medford's counsel stated that Medford "is certain that . . . Meeks lied," about pulling the pipe from Medford's pocket, but that in counsel's opinion, "they agree on most of the things." Counsel argued that while Medford "thinks he's lying," it was likely that Meeks "doesn't remember" where the pipe came from or "didn't recall whether . . . Medford said something about the coat." He reiterated, "Basically, Officer Meeks' story is identical to . . . Medford's in most details."

Here, the prosecution was responding to the "little bit different position" taken by defense counsel when he suggested that Meeks was forgetful instead of a liar and a framer. This constituted proper jury argument.[4] In this circumstance, we find that the State's characterization

---

[4]A prosecutor "'may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and not constituting unsworn testimony.'" *Penry v. State*, 903 S.W.2d 715, 756 (Tex. Crim. App. 1995) (quoting *Felder v. State*, 848 S.W.2d 85, 95 (Tex. Crim. App. 1992)). The statement that defense counsel knew his client's position was unreasonable was the voicing of an opinion deduced by counsel's failure to adopt the position that Meeks was a liar and a framer during closing argument. The trial court's instruction to the jury made clear that the prosecutor's statement was not to be considered testimony.

of defense counsel's argument in light of Medford's testimony was not improper argument.

Therefore, we overrule Medford's last point of error.

## V.      Conclusion

We affirm the trial court's judgment.


                                    Bailey C. Moseley
                                    Justice


Date Submitted:      January 17, 2014
Date Decided:        January 28, 2014

Do Not Publish